# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STATE OF WISCONSIN
By Attorney General Brad D. Schimel; *et al.,*

                              Plaintiffs,

        v.                                          Case No. 2:16-cv-5073-MSG

INDIVIOR INC. f/k/a RECKITT BENCKISER
PHARMACEUTICALS, INC.; *et al.*,

                              Defendants.

# DEFENDANT RECKITT BENCKISER HEALTHCARE (UK) LIMITED'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS
# <u>MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.     BACKGROUND ...................................................................................................3

II.    PLAINTIFFS' MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION CLAIMS (COUNTS I & II) DO NOT STATE A CLAIM AS TO RBH..........................5

     A.    The Complaint Fails To Allege RBH Possessed Monopoly Power .......................5

     B.    The Complaint Does Not Allege Exclusionary Conduct By RBH .......................7

III.   PLAINTIFFS' CONSPIRACY CLAIMS (COUNTS III & IV) FAIL TO STATE A CLAIM AS TO RBH ..........................................................................................9

IV.   PLAINTIFFS' STATE LAW CLAIMS (COUNT V) SHOULD BE DISMISSED..........13

V.    PLAINTIFFS FAIL TO ALLEGE SUFFICIENT GROUNDS FOR THE EXERCISE OF PERSONAL JURISDICTION OVER RBH......................................................17

     A.    RBH Is Not Subject To General Jurisdiction........................................................18

     B.    RBH Is Not Subject To Specific Jurisdiction .......................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Health-Care Servs. v. Radford Community Hosp.*,
   910 F.2d 139 (4th Cir. 1990) .................................................13

*Apotex, Inc. v. Cephalon, Inc.*,
   No. 2:06-CV-2768, 2014 WL 5354243 (E.D. Pa. Aug. 19, 2014) ...........................................6

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987)................................................................18

*Atuahene v. City of Hartford*,
   10 Fed. Appx. 33 (2d Cir. 2001) ...................................................2

*In re Auto. Parts Antitrust Litig.*,
   No. 2:13-cv-02502, 2015 U.S. Dist. LEXIS 96470 (E.D. Mich. July 23, 2015)...................20

*In re Auto. Refinishing Paint Antitrust Litig.*,
   358 F.3d 288 (3d Cir. 2004)..........................................................17

*Barq's Inc. v. Barq's Beverages, Inc.*,
   677 F. Supp. 449 (E.D. La. 1987)...................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................11

*Berkey Photo Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979)..........................................................8

*Borough of Lansdale v. PP & L, Inc.*,
   426 F. Supp. 2d 264 (E.D. Pa. 2006) .................................................13

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*,
   239 F. Supp. 2d 550 (E.D. Pa. 2002) .................................................11

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..........................................................10

*California Dental Ass'n v. FTC*,
   526 U.S. 756 (1999)..................................................................15

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
   334 F.3d 390 (4th Cir. 2003) ........................................................18

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    993 F. Supp. 271 (D.N.J. 1998) ........................................................................14

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ...............................................................................12, 13

*Crossroads Corp. v. Orange & Utilities, Inc.*,
    159 F.3d 129 (3d Cir.1998) ...................................................................5, 9

*Daimler AG v. Baumann*,
    134 S. Ct. 746 (2014) ............................................................................17, 18

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
    610 F.3d 820 (3d Cir. 2010) ...................................................................12

*In re Digital Music Antitrust Litig.*,
    592 F. Supp. 2d 435 (S.D.N.Y.2008) ....................................................15

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ...................................................2

*Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*,
    679 F.2d 516 (5th Cir. 1982) .................................................................7

*Discon, Inc. v. NYNEX Corp.*,
    93 F.3d 1055 (2d Cir. 1996) ..................................................................6

*First Chi. Int'l v. United Exch. Co.*,
    836 F.2d 1375 (D.C. Cir. 1988) .............................................................18

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................17

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...................................................................2

*General Elec. Co. v. Deutz AG*,
    270 F.3d 144 (3d Cir. 2001) ...................................................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ..............................................................................17

*Hanson v. Denckla*,
    357 U.S. 235, 253 (1958) .......................................................................20

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ...................................................................9

-iii-

*Indivior Inc. v. Mylan Tech. Inc.*,
  1:15-cv-01016-RGA (D. Del. Nov. 4, 2015) ........................................................7

*Indivior Inc. v. Sandoz, Inc.*,
  1:15-cv-01051-RGA (D. Del. Nov. 13, 2015) .......................................................7

*Indivior Inc. v. Teva Pharm. USA, Inc.*,
  1:16-cv-0178-RGA (D. Del. Mar. 21, 2016) .......................................................7

*In re Insurance Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010).....................................................................3, 9, 11

*Luellin v. Gulick*,
  No. 1:10CV203, 2012 U.S. Dist. LEXIS 40281 (N.D. W. Va. Mar. 26, 2012) .....................18

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007)...................................................................19

*Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*,
  983 F.2d 551 (3d Cir. 1993)...................................................................20

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)...........................................................................11

*In re Mushroom Direct Purchaser Antitrust Litig.*,
  514 F. Supp. 2d 683 (E.D. Pa. 2007) ...........................................................2

*Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  838 F.3d 421 (3d Cir. 2016)..................................................................8, 9

*N. Pac. Ry. Co. v. United States*,
  356 U.S. 1 (1958)............................................................................10

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  350 F. Supp. 2d 160 (D. Me. 2004) ...........................................................16

*Orazi v. Hilton Hotels Corp.*,
  No. 09–cv–05959, 2010 WL 4751728 (E.D. Pa. Nov. 22, 2010)...................................18

*Pennzoil Prods. Co. v. Colelli & Assocs.*,
  149 F.3d 197 (3d Cir. 1998)..................................................................17

*R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*,
  199 F. Supp. 2d 362 (M.D.N.C. 2002) ..........................................................15

*Schering-Plough Corp. v. FTC*,
  402 F.3d 1056 (11th Cir. 2005) ...............................................................15

*Segal Co. (Eastern States), Inc. v. Amazon.com*,
   280 F. Supp. 2d 1229 (W.D. Wash. 2003)............................................................16

*Siegel Transfer v. Carrier Express*,
   54 F.3d 1125 (3d Cir. 1995)..............................................................................12

*United States ex rel. Spay v. CVS Caremark Corp.*,
   913 F. Supp. 2d 125 (E.D. Pa. 2012) ...................................................................7

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   64 F. Supp. 3d 665, 713 (E.D. Pa. 2014) ...................................................2, 4, 5, 8

*In re Tamoxifen Citrate Antitrust Litig.*,
   277 F. Supp. 2d 121 (E.D.N.Y. 2003) .............................................................14, 15

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)..............................................................................20

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
   75 F.3d 147 (3d. Cir. 1996)...............................................................................20

*Walgreen Co. v. AstraZeneca Pharmaceuticals L.P.*,
   534 F. Supp. 2d 146 (D.D.C. 2008) .....................................................................8

*In re Wellbutrin XL Antitrust Litig.*, No. CIV. A. 08-2431,
   2009 WL 678631 (E.D. Pa. Mar. 13, 2009)...........................................................6

**State Cases**

*Cheramie Serv. v. Shell Deepwater Prod., Inc.*,
   35 So.3d 1053 (La. 2010) .................................................................................16

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Chan. 2007).........................................................................2

*Messer Griesheim Indus., v. Cryotech of Kingsport, Inc.*,
   131 S.W.3d 457 (Tenn. Ct. App. 2003) ..............................................................16

**Federal Statutes**

15 U.S.C. § 1 ...................................................................................... *passim*

15 U.S.C. § 2 ...................................................................................... *passim*

15 U.S.C. § 45 ...............................................................................................14

**State Statutes**

Ala. Code § 8-19-5(27) (2016) ............................................................................16

Alaska Stat. § 45.50.471 (West 2016) ...................................................................................15

Alaska Stat. § 45.50.562 (West 2016) ...................................................................................14

Ark. Code Ann. § 4–75–301 (2016) ......................................................................................14

Ark. Code Ann. § 4–88–101 (2016) ......................................................................................15

Cal. Bus & Prof. Code § 17200 (2016) ..................................................................................5

Cal. Bus. & Prof. Code § 167000 (2016) ..............................................................................14

Colo. Rev. Stat. § 6-4-101 (2016) .........................................................................................14

Conn. Gen. Stat § 35-44b (West 2016) ..................................................................................14

Conn. Gen. Stat § 42-110b (West 2016) ................................................................................15

D.C. Code §§ 28-4502, *et seq.* (2016) ................................................................................14

Del. Code Ann. tit. 6, § 2113 (West 2016) ............................................................................14

Fla Stat. Ann. § 542.32 (West 2016) .....................................................................................14

Fla. Stat. Ann. § 501.204(2) (West 2016) .............................................................................15

Ga. Code Ann. § 10-1-391(b) (West 2016) ...........................................................................15

Haw. Rev. Stat § 480-3 (West 2016) .....................................................................................14

Idaho Code Ann. § 48-102(3) (West 2016) ...........................................................................14

Ill. Comp. Stat. 10/1 to 10/11 (2016) ....................................................................................14

Iowa Code Ann. § 553.1 (West 2016) ...................................................................................14

Iowa Code Ann. § 714.16(1)(n) (West 2016) ........................................................................15

Kan. Stat. Ann. § 50-163 (2016) ...........................................................................................14

Ky. Rev. Stat. Ann. 367.110 (West 2016) .............................................................................14

Ky. Rev. Stat. Ann. § 367.175 (West 2016) ..........................................................................15

La. Rev. Stat. Ann. § 51:121 (2016) ......................................................................................14

La. Rev. Stat Ann. § 51-1401 (2016) .....................................................................................16

Mass Gen. Laws ch. 93 § 2 (West 2016) ...............................................................................15

Md. Code Ann., Com. Law. § 11-202(a)(2) (West 2016) .............................................................14

Me. Rev. Stat. Ann. tit. 10 § 1101 (2016) ...................................................................................14

Me. Rev. Stat. Ann. tit. 5 § 207(1) (2016) ..................................................................................15

Mich. Comp. Laws Ann. § 445.771 (West 2016) ........................................................................14

Minn. Stat. § 325D.46, *et seq.* (2016) .........................................................................................14

Minn. Stat. §§ 325D.43, *et seq.* (2016) ......................................................................................16

Miss. Code. Ann. § 75-21-1 (West 2016) ....................................................................................14

Miss. Code. Ann. § 75-24-3(c) (West 2016) ...............................................................................15

Mo. Code Regs. Ann. tit. 15 § 60-8.020 (2016) .........................................................................15

Mo. Rev. Stat § 407.010 (2016)...................................................................................................15

Mo. Rev. Stat. § 416.141 (2016)..................................................................................................14

N.C. Gen. Stat. Ann. § 75-1 (2016) ............................................................................................14

N.C. Gen. Stat. Ann. § 75-1.1 (2016) .........................................................................................15

N.H. Rev. Stat. Ann. § 356:14 (2016) .........................................................................................14

N.M. Stat. Ann. § 57-1-15 (West 2016) ......................................................................................14

N.M. Stat. Ann. § 57-12-4 (West 2016) ......................................................................................15

N.Y. Exec. Law § 63(12) (2016) .................................................................................................16

N.Y. Gen. Bus. Law § 340 (2016) ...............................................................................................14

Neb. Rev. Stat. Ann. § 59-829 (2016) .........................................................................................14

Neb. Rev. Stat. Ann. § 87-301 (2016) .........................................................................................16

Ohio Rev. Code Ann. § 1331.01 (West 2016)..............................................................................14

Okla. Stat. Ann. tit. 15 § 752.14 (West 2016) .............................................................................15

Okla. Stat. Ann. tit.79 § 212 (West 2016) ...................................................................................14

Or. Rev. Stat. Ann. § 646.715(2) (West 2016) ............................................................................14

73 Pa. Const. Stat. Ann. § 201-2(4) (West 2016) ........................................................................16

R.I. Gen. Laws Ann. § 6-13.1-3 (West 2016) ...............................................................15

R.I. Gen. Laws Ann. § 6-36-2(b) (West 2016) ............................................................14

S.C. Code Ann. § 39-5-20(b) (2016) ...........................................................................15

Tenn. Code Ann. § 47-25-101 (West 2016) .................................................................14

Tenn. Code Ann. § 47-18-101 (West 2016) .................................................................16

Utah Code Ann. § 76-10-3118 (West 2016) .................................................................14

Va. Code Ann. § 59-1 (West 2016) ..............................................................................14

Vt. Stat. Ann. tit. 9 § 2453(b) (West 2016) .................................................................15

W.Va. Code Ann. § 47-18-16 (West 2016) ..................................................................14

Wash. Rev. Code Ann. § 19.86.920 (West 2016) ........................................................14

Wash. Rev. Code Ann. § 19.86.020 (West 2016) ........................................................16

Wis. Stat. Ann. § 133.01 (West 2016) .........................................................................14

**Rules**

Fed. R. Civ. P. 8(a) .....................................................................................................11

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW (4th Ed. 2015) ............................10, 15

Richard A. Posner, ANTITRUST LAW (2d ed. 2001) ........................................................6

Paul A. Samuelson & William D. Nordhaus, ECONOMICS (17th ed. 2001)....................................6

Defendant Reckitt Benckiser Healthcare (UK) Limited ("RBH") is a company organized under the laws of England and Wales and based in the United Kingdom.  *See* First Amended Complaint ("Complaint") ¶ 12 (Dkt. 75).  RBH and Defendant Indivior Inc. ("Indivior") were co-subsidiaries of Reckitt Benckiser Group plc ("RB Group") until a 2014 demerger in which Indivior—then known as Reckitt Benckiser Pharmaceuticals, Inc.—was spun off.  *See* Am. Compl. ¶¶ 11, 13.  Indivior—not RBH—held (and still holds) the NDAs for both Suboxone tablets and Suboxone film.  *See* Ernst Decl. ¶¶ 2, 3; Exs. 1, 2.  Indivior—not RBH—sold (and still sells) Suboxone in the United States, and stood to lose market share to generic manufacturers of Suboxone tablets.  *See* Ernst Decl. ¶¶ 2, 3; Exs. 1, 2; *see also* Am. Compl. ¶ 11.  Not surprisingly, then, the Complaint is devoid of a single specific allegation that RBH even participated in the relevant market, much less that it played any role in any of the purportedly unlawful acts alleged in the Complaint, including disparaging the legacy tablet product, filing a sham FDA citizen's petition, and failing to cooperate with generics during the process for developing a single shared Risk Evaluation and Mitigation Strategy ("REMS").

In their zeal to include RBH as a defendant here, Plaintiffs employ two equally disingenuous pleading artifices.  First, they attribute all the conduct in the Complaint to "Reckitt," which they obfuscate to include RBH as well as Indivior.  *See* Am. Compl. ¶ 13 (defining "Reckitt"); *id.* ¶ 84 (". . . *Reckitt* induced conversion of the market to the Film by raising the price of its Suboxone Tablets before the introduction of the AB-rated generic tablet product into the market."); ¶ 93 (". . . *Reckitt* engaged in multiple delay tactics and made misleading statements to conceal its true intent, which was to prolong the approval of the ANDAs for generic Suboxone Tablets."); ¶ 102 (". . . *Reckitt* filed a citizen petition asking the FDA to withhold approval of the ANDAs for generic Suboxone Tablets . . . .") (emphases

added).  Second, they allege in the broadest possible terms that RBH is "in whole or in part responsible for some or all of the conduct" in the Complaint.  *See* Am. Compl. ¶ 12.

This Court previously rejected these tactics when the class plaintiffs tried them.  *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 713 (E.D. Pa. 2014) (dismissing claims against Reckitt Benckiser Inc., Reckitt Benckiser LLC, and RBH "for failure to identify what role, if any, these entities played in the alleged anticompetitive scheme"); *id.* at 713-14, n.31 (virtually identical allegation that RBH was "in whole or in part responsible for some or all of the conduct alleged herein and attributed to Reckitt" insufficient).  Other courts have done the same where the complaint failed to inform each defendant of the conduct with which it was charged.  *See, e.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (post-*Twombly* and *Iqbal*, "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss"); *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (A plaintiff cannot merely "lump[] all of the defendants together in each claim and provid[e] no factual basis to distinguish their conduct."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) ("The complaint alleges direct involvement of the Parent Companies by way of generic references to 'defendants.' This approach is insufficient."); *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 699 (E.D. Pa. 2007) (granting motion to dismiss Section 2 claims for failure to plead sufficient elements against each defendant); *Desimone v. Barrows*, 924 A.2d 908, 939 (Del. Chan. 2007) (dismissing claim premised on "spineless" allegations that defendants "Jewels *and/or* Smith" breached fiduciary duties by approving illegal backdating of options) (emphasis added).

Aside from these defective wholesale allegations, which may not be considered in the 12(b)(6) analysis, all that remains of the Complaint as against RBH is that it allegedly had

monopoly power, Am. Compl. ¶ 132, that it entered into a contract with Defendant MonoSol Rx, LLC ("MonoSol") to develop a new film product, *id.* ¶ 46, and that it "participated" in some unspecified way in "discussions" about a "plan" to convert the market to film, *id.* ¶ 71.  None of this states a claim.  To begin with, RBH is not even alleged to have been a participant in the relevant market, and therefore could not have had monopoly power.  *See infra* Part II.A.  Second, it is perfectly lawful and pro-competitive to develop a new product, so the agreement with MonoSol cannot form the basis of either a monopolization or a conspiracy claim.  *See infra* Parts II.B, III.  Finally, the allegation concerning RBH's "participat[ion]" in "discussions" is so conclusory as to be meaningless and fails to identify any *agreement* to carry out an unlawful objective.  Nor can any such agreement be inferred, because the obvious inference from the Complaint is that Indivior and RBH did not act in concert with respect to the alleged unlawful conduct, and there is no reason to suppose Indivior would have needed, or asked for, much less received, RBH's assistance.  *See infra* Part III; *see also In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 322 (3d Cir. 2010) ("[A]llegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567, (2007)).

For these and other reasons set out below, the claims against RBH should be dismissed.

# I.    BACKGROUND

RBH is a private limited company incorporated under the laws of England and Wales and based in Slough, United Kingdom.  It is a wholly-owned subsidiary of RB Group.  *See* Am. Compl. ¶ 12.  RB Group previously owned Reckitt Benckiser Pharmaceuticals, Inc. ("RBP Inc.")—now known as Indivior—before separating the company from RB Group in a demerger transaction.  *See* Am. Compl. ¶ 13.  RBH was the Reckitt manufacturing entity that made, among

other things, Suboxone tablets, *id.* ¶ 12, but it was Indivior Inc. (and RBP Inc. before the 2014 demerger) that sold Suboxone "throughout the United States," *id.* at ¶ 11.

Beginning in 2013, RBH was named as a defendant in suits eventually comprising the multi-district class action litigation brought by private plaintiffs against Indivior.  As with this case, the class action complaints alleged a "product hopping" scheme as well as exclusionary tactics to delay approval of generic version of Suboxone tablets.  *In re Suboxone*, 64 F. Supp. 3d at 672.  The class plaintiffs alleged that, when faced with impending entry of generic tablets, Indivior sought to convert the market from tablets to film by "falsely disparaging the tablet through fabricated safety concerns" and by threatening to remove the tablet form the market as a result.  *Id.*  The class complaint also alleged that FDA approval of generic tablets was stalled because the process of developing a single-shared REMS was intentionally delayed, and because of a sham FDA citizen's petition claiming safety concerns associated with generic Suboxone tablets.  *Id.* at 672, 676.

On December 3, 2014, in a detailed opinion, the Court granted in part and denied in part Indivior's motion to dismiss.  The Court held that while launching Suboxone film was not in and of itself anticompetitive, the class plaintiffs sufficiently stated a claim for unlawful "product hopping" because "[t]he threatened removal of the tablets from the market in conjunction with the alleged fabricated safety concerns could plausibly coerce patients and doctors to switch from tablet to film."  *Id.* at 682.  As to the alleged efforts to delay entry of generic tablets, the Court allowed the case to proceed on the sham citizen's petition theory, but rejected the failure to engage in developing a single-shared REMS program as a basis for liability.  *Id.* at 688-690.  The Court explained that the antitrust laws "do not impose a duty" on branded pharmaceutical companies to aid generics in obtaining speedy FDA approval.  *Id.* at 688.

While the Court allowed the class actions to proceed against Indivior, it dismissed all claims against RBH.  Indeed, when RBH moved to dismiss, the Direct Purchaser plaintiffs did not even oppose the motion, and the End Payors failed to tie RBH to any of the unlawful actions alleged in their complaint.  *In re Suboxone*, 64 F. Supp. 3d at 713-14.  The Court—recognizing that it was Indivior "which actually sells Suboxone"—found the complaints did not state claims against RBH.  *Id.* at 713.

Nonetheless, on September 22, 2016, plaintiff States filed nearly identical antitrust claims to those in the class actions and insisted on naming RBH as a defendant.  In fact, they rely principally on the same pleading obfuscations— defining "Reckitt" to include RBH and alleging cryptically that RBH was "in whole or in part responsible for some or all of the conduct alleged in this Complaint and attributed to Reckitt," *see, e.g.*, Direct Purchasers' Consol. Am. Compl. at 1, ¶ 23, *In re Suboxone*, 64 F. Supp. 3d at 665—that this Court expressly rejected when dismissing RBH the first time.  *In re Suboxone*, 64 F. Supp. 3d at 713-14, n.31.

## II.   PLAINTIFFS' MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION CLAIMS (COUNTS I & II) DO NOT STATE A CLAIM AS TO RBH

Unlawful monopolization requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *Crossroads Corp. v. Orange & Utilities, Inc.*, 159 F.3d 129, 141 (3d Cir.1998).  Plaintiffs fail to allege either element against RBH.

### A.   The Complaint Fails To Allege RBH Possessed Monopoly Power

The Complaint itself undercuts its own defective, conclusory allegation that RBH possessed monopoly power.  *See* Am. Compl. ¶ 132.  Plaintiffs define the relevant market as co-formulated buprenorphine/naloxone, including Suboxone and its AB-rated equivalents in the

United States.  *See* Am. Compl. ¶ 132.[1]  But Plaintiffs nowhere allege—because they cannot—that RBH ever sold Suboxone in the United States.  "[I]t is axiomatic that a firm cannot monopolize a market in which it does not compete."  *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998); *see In re Wellbutrin XL Antitrust Litig.*, No. CIV.A. 08-2431, 2009 WL 678631, at *7 (E.D. Pa. Mar. 13, 2009) (dismissing monopolization claims against defendant where plaintiffs failed to allege defendant ever sold drug in the United States).  Plaintiffs attempt to avoid this fundamental problem by alleging that RBH (and other defendants) "possessed monopoly power . . . as owners or licensees to use Suboxone intellectual property," *see* Am. Compl. ¶ 132, seemingly suggesting that RBH can be deemed a monopolist by virtue of some unspecified intellectual property holdings even if it does not sell the product at issue.  This is incorrect as a matter of fundamental antitrust principles.

As Judge Posner explained in his oft-cited text, "*[a] monopolist is a seller* (or group of sellers acting like a single seller) who can change the price at which his product will sell in the market by changing the quantity that he sells."  Richard A. Posner, ANTITRUST LAW 9 (2d ed. 2001).  In fact, the word "monopolist" literally means seller.  Paul A. Samuelson & William D. Nordhaus, ECONOMICS 169 (17th ed. 2001) ("It is called a 'monopolist,' from the Greek work *mono* for 'one' and *polist* for 'seller.'").  Not surprisingly then, as this Court has previously observed, monopoly power is shown either directly by demonstrating a defendant's ability to raise price by restricting its output, or circumstantially by inferring monopoly power from a defendant's high share of the relevant market.  *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-CV-

---

[1] As set forth in the Memorandum of Law in Support of Monosol Rx, LLC's Motion to Dismiss the First Amended Complaint ("MonoSol's Br.") at Part III.A., Plaintiffs' alleged relevant product market is implausible.  RBH incorporates those arguments herein.

2768, 2014 WL 5354243, at *1 (E.D. Pa. Aug. 19, 2014).  By definition, having no sales, and thus no market share, precludes a finding of monopoly power.  *Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*, 679 F.2d 516, 529 (5th Cir. 1982) ("[T]here is considerable support for the proposition that low market shares, if undisputed, make monopolization an impossibility as a matter of law."); *Barq's Inc. v. Barq's Beverages, Inc.*, 677 F. Supp. 449, 455 (E.D. La. 1987) (zero percent market share insufficient to show monopoly power).

Even if patents could be relevant to the monopoly power analysis here, Plaintiffs do not and could not identify any patent RBH holds covering Suboxone tablets (or film), or how that intellectual property conferred power on RBH.  The Complaint references patent enforcement efforts concerning Suboxone film patents, Am. Compl. at ¶¶ 51-52, but Plaintiffs do not allege that those enforcement efforts were undertaken by RBH or explain how those efforts relate to the alleged unlawful scheme at issue.  In any event, the relevant court filings—of which the Court may take judicial notice[2]—show that the enforcement cases were brought by MonoSol and Indivior, not RBH.  *See, e.g., Indivior Inc. v. Teva Pharm. USA, Inc.,* 1:16-cv-0178-RGA (D. Del. Mar. 21, 2016); *Indivior Inc. v. Sandoz, Inc.,* 1:15-cv-01051-RGA (D. Del. Nov. 13, 2015); *Indivior Inc. v. Mylan Tech. Inc.,* 1:15-cv-01016-RGA (D. Del. Nov. 4, 2015).[3]

**B.    The Complaint Does Not Allege Exclusionary Conduct By RBH**

Leaving aside the defective wholesale allegations discussed above which do not state a claim, *see supra* p. 1–3 and cases cited, none of the conduct actually pleaded as to RBH is

---

[2] *See United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139 (E.D. Pa. 2012) ("On a motion to dismiss, courts take judicial notice of documents which are matters of public record such as . . . court-filed documents.") (citing *Rouse v. II-VI Inc.*, No. Civ.A.06-566, 2008 WL 398788, at *1 (W.D. Pa. Feb. 11, 2008)).

[3] The allegation that RBH played a "role in the development [or] manufacture" of Suboxone, *see* Am. Compl. at ¶ 132, similarly fails to overcome the fact that RBH cannot monopolize a market in which it does not sell any product.

exclusionary.  The Complaint principally alleges that RBH contracted with MonoSol to develop a new film version of Suboxone.[4]  Rulings in antitrust cases involving a variety of industries, including pharmaceuticals, establish that developing a new product is not in and of itself anticompetitive.  As this Court has stated:

> Even a monopolist may expand its market share and increase demand for its products through technological innovation, 'and such actions are 'perfectly consistent with the competitive forces that the Sherman Act was intended to foster….
> [W]hat is clear from the case law is that simply introducing a new product on the market, whether it is a superior product or not, does not, by itself, constitute exclusionary conduct.

*In re Suboxone*, 64 F. Supp. 3d. at 679, 682 (citations omitted).

Other courts have reached the same result.  *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 286 (2d Cir. 1979) ("The attempt to develop superior products is … an essential element of lawful competition."); *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 440 (3d Cir. 2016) ("*Doryx*") (confirming that introduction of a new product could violate the Sherman Act only if, *inter alia*, coercive conduct is present); *Walgreen Co. v. AstraZeneca Pharmaceuticals L.P.*, 534 F.Supp.2d 146, 152-153 (D.D.C.2008) (granting motion to dismiss 'product hopping' antitrust claims because next-generation product supplemented consumer choices rather than eliminating them).

The Complaint also alleges—in its description of RBH as a defendant but not in the body of the substantive allegations—that RBH "established the parameters for the timing of the launch and the formulation of Suboxone film, gathers, and investigates all consumer complaints as to

---

[4]  *See* Am. Compl. ¶46 (". . . MonoSol and Reckitt Benckiser Healthcare UK Ltd. signed an agreement to develop the new Film and bring it to market for the purpose of extending Reckitt's exclusivity in the co-formulated buprenorphine/naloxone market."); Am. Compl. ¶150 ("Reckitt Benckiser Healthcare UK, Ltd. and MonoSol entered into a development agreement whereby MonoSol granted Reckitt the right to use its patented sublingual film technology to manufacture Suboxone in a film version.").

Suboxone products, trademarked the names for the financial programs to encourage the switch from Suboxone tablets to film, and obtained patents together with MonoSol related to Suboxone film development . . . . [and] monitored the taste and quality of Suboxone film, prepared materials for regulatory approval of Suboxone film, manufactured and supplied the ingredients for Suboxone film, and provided grants for the study of Suboxone." *See* Am. Compl. ¶12. However, Plaintiffs never tie this litany of allegations to any of the alleged unlawful conduct at issue. And on its face, none of this alleged conduct is remotely exclusionary, but simply describes pro-competitive actions related to new product development.[5]

Accordingly, Plaintiffs fail to state a claim for monopolization or attempted monopolization as to RBH.[6]

## III. PLAINTIFFS' CONSPIRACY CLAIMS (COUNTS III & IV) FAIL TO STATE A CLAIM AS TO RBH

To allege a claim under Sherman Act Section 1 (Count IV), or for conspiracy to monopolize under Section 2 (Count III), Plaintiffs must plead an agreement or conspiracy to unreasonably restrain trade or engage in exclusionary conduct. *In re Insurance Brokerage*, 618 F.3d at 314; *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010). An agreement alone is never the target of the antitrust laws; "most agreements are both

---

[5] The only other allegation actually naming RBH—that it "participated in discussions" regarding a "plan" to remove Suboxone tablets from the market, *see* Am. Compl. ¶ 71—is discussed in Part III immediately below. For the same reasons this allegation fails to state a claim for conspiracy, it necessarily fails to allege exclusionary conduct. Moreover, even the alleged conduct misleadingly attributed to "Reckitt" in the complaint is not exclusionary, particularly under the standard recently announced in *Mylan Pharm. Inc. v. Warner Chilcott Public Ltd. Co.*, 838 F.3d 421 (3d Cir. 2016) ("*Doryx*"). *See* Indivior Inc.'s Memorandum in Support of its Motion to Dismiss ("Indivior's Br.") at Part III and MonoSol's Br. at Part I.C., which RBH incorporates herein by reference.

[6] For the same reasons, Plaintiffs fall far short of alleging that RBH "engaged in predatory or anticompetitive conduct with . . . a specific intent to monopolize," as required for their attempted monopolization claim. *See Crossroads*, 159 F.3d at 141.

open and lawful."  6 Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW ¶ 1400 (4th Ed. 2015) (hereinafter AREEDA); *N. Pac. Ry. Co. v. United States,* 356 U.S. 1, 5 (1958) (holding that the Sherman Act "preclude[es] only those contracts or combinations which 'unreasonably' restrain competition").

Here, Plaintiffs allege that RBH entered into an agreement with MonoSol to develop Suboxone film, Am. Compl. ¶ 12, but as explained above, it is perfectly legal to develop a next generation product.  *See supra* Part II.B and cases cited.  *A fortiori*, it is perfectly legal to enter into an agreement to develop such a product.[7]  The Complaint does not allege any facts showing any broader, coercive "product hopping" agreement (or agreement to delay generic competition) to which RBH was a party, or from which such an agreement can be plausibly inferred.

To begin with, Plaintiffs do not plead any express agreement or promise involving RBH to engage in any of the acts involved in the alleged strategy to switch the market to film or to delay generic entry.  The contract between RBH and MonoSol, which the Court may consider,[8] is devoid of any such terms.  It provides only that MonoSol would develop a "pharmaceutical film" for RBH.  *See* Ernst Decl. ¶ 4; Ex. 3.  Plaintiffs do not allege any agreement at all between RBH and Indivior.  The absence of any express agreement should end the inquiry.  As the leading antitrust treatise states, when the alleged participants in a conspiracy are not competitors, non-conspiracy should normally be inferred in the absence of an unambiguously express promise on the point of the challenged action . . . ."  6 AREEDA ¶ 1402b. ("speculative possibility" of

---

[7] RBH incorporates herein by reference the arguments set forth in MonoSol's Br. at Part I.B and Indivior's Br. at Part IV.B..

[8] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (courts may consider on a motion to dismiss a "document *integral to or explicitly relied* upon in the complaint . . . .  Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.") (internal quotations omitted) (emphasis in original).

concerted action cannot be assumed in the absence of concerted action when the parties involved are non-competitors); *see also United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) (holding that "[a]n agreement among persons who are not actual or potential competitors in a relevant market is for Sherman Act purposes *brutum fulmen*").

The vague allegation that "[e]mployees of [RBH] participated in discussions regarding the plan to remove Tablets from the market" is also insufficient to identify any express agreement or promise with respect to any of the alleged unlawful conduct.  *See* Am. Compl. ¶ 71.  For example, Plaintiffs do not identify the other parties to these "discussions," or who from RBH participated, or what anyone from RBH (or anyone else) said, or what the participants agreed to do, or even whether RBH agreed with whatever "plan" was under discussion.  Even under Rule 8(a), this is not enough to plead a conspiracy involving RBH.  *See Twombly,* 550 U.S. at 556 (holding that "bare assertion[s] of conspiracy" are insufficient to survive a motion to dismiss); *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563 (E.D. Pa. 2002) (conclusory allegation that defendant participated in "many meetings" insufficient to state antitrust claim).

Nor do Plaintiffs plead facts from which any broader conspiracy to which RBH was a party can be *inferred* in the absence of an express agreement.  To infer a conspiracy in these circumstances, even between competitors, a plaintiff must allege facts that plausibly "tend[] to exclude the possibility that [the defendants] were acting independently."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *see also Ins. Brokerage*, 618 F.3d at 322 ("[A]llegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged.") (quoting *Twombly*, 550 U.S. at 567).  Here, despite Plaintiffs' pleading artifices, Indivior—not RBH—was responsible for and sold Suboxone tablets and film.  *See* Ernst Decl. ¶¶

2, 3; Exs. 1, 2.  Indivior—not RBH—filed the citizen's petition.  *See* Ernst Decl. ¶ 5; Ex. 4.

Plaintiffs nowhere allege that RBH participated in these allegedly unlawful actions, and there is

no plausible reason that Indivior would have needed RBH's assistance or participation.  Thus,

nothing in the Complaint tends to negate the possibility that Indivior acted independently of

RBH, and in fact the record that the Court may consider shows that Indivior did exactly that.[9]

Finally, even if the Complaint somehow adequately alleged RBH's involvement, the type

of coordination the States allege is not actionable under *Copperweld Corp. v. Independence Tube

Corp.*, 467 U.S. 752 (1984), and its progeny, which limit Section 1 to agreements involving

"independent centers of decision making." *Id.* at 769. As the Third Circuit explained, "[t]he

focus of the inquiry under § 1 of the Sherman Act centers on diminution of competition that

would otherwise exist." *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 835 (3d Cir.

2010).  That is because Section 1 of the Sherman Act seeks to prevent the accumulation of

market power that occurs when actors, "previously pursuing divergent interests and goals," act in

concert.  *Siegel Transfer v. Carrier Express*, 54 F.3d 1125, 1137 (3d Cir. 1995).  Under these

principles, any coordination among RBH, Indivior, and MonoSol could not violate Section 1.  As

a preliminary matter, RBH and RBP Inc. (now Indivior) were, at the relevant times, sister

companies under RB Group, and under the *Copperweld* doctrine two wholly-owned subsidiaries

of the same parent cannot conspire with each other for purposes of the antitrust laws. *See

Copperweld*, 467 U.S. at 755 (holding that a corporation and its wholly owned subsidiaries "are

incapable of conspiring with each other for purposes of § 1 of the Sherman Act"); *Borough of

---

[9] As set forth above, the alleged "product hopping" and generic delay allegations do not
constitute anticompetitive conduct anyway for the reasons set forth in Indivior's Br. at Parts III,
V, and MonoSol's Br. at Part I, which RBH incorporates by reference herein.  Furthermore, the
alleged anticompetitive conduct did not proximately cause Plaintiffs' claimed injury, as set forth
in MonoSol's Br. at Part II, which RBH incorporates by reference herein.

*Lansdale v. PP & L, Inc.,* 426 F. Supp. 2d 264, 293 (E.D. Pa. 2006) (applying *Copperweld* in the context of sister companies); *see also Advanced Health-Care Servs. v. Radford Community Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990) ("[T]wo subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another for purposes of § 1 of the Sherman Act."). Similarly, for the reasons detailed in the briefs submitted by Indivior and MonoSol, the *Copperweld* doctrine also extends to any coordination among Indivior, RBH, and Monosol, because—as the Complaint alleges—those entities did not compete with each other or pursue separate economic interests in the relevant market.[10] *Siegel Transfer*, 54 F.3d at 1137. Consequently, any agreement among them could not have "deprive[d] the marketplace of the independent centers of decision making that competition assumes and demands." *Copperweld*, 467 U.S. at 769. Indeed, the Complaint offers no reason to believe MonoSol would have participated *at all* in the relevant market but for its "joint venture" with "Reckitt." *See* Am. Compl. ¶ 12.

Accordingly, Plaintiffs' conspiracy allegations against RBH fail to state a claim.

## IV.    PLAINTIFFS' STATE LAW CLAIMS (COUNT V) SHOULD BE DISMISSED

Plaintiffs' state law antitrust and consumer protection claims arise from the same conduct as their federal claims, and thus fail for the same reasons their federal claims do. Moreover, certain state consumer protection claims fail because Plaintiffs have not alleged the type of fraudulent or deceptive conduct those statutes require.

---

[10] *See* Indivior's Br. at Part IV.A.; MonoSol's Br. at Part I.A.; *see also* Am. Compl. ¶ 12 (alleging RBH and MonoSol engaged in a "joint venture").

First, each of the state antitrust laws at issue are either explicitly aligned with the Sherman Act or interpreted consistently with federal antitrust law. [11] *See In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003) *aff'd,* 466 F.3d 187 (2d Cir. 2006) ("[S]ince [p]laintiffs fail to state a claim under the Sherman Act, and since the state antitrust law claims are based on the same allegations, those claims are also dismissed.");[12] *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 993 F. Supp. 271, 281, n.23 (D.N.J. 1998) ("To the extent that plaintiffs allege a separate antitrust claim pursuant to state law, courts have consistently found that the failure to state viable federal antitrust claims is fatal to state antitrust claims."), *aff'd,* 168 F.3d 119 (3d Cir. 1999).

Next, each of the unfair trade practices/consumer protection statutes asserted (save for those addressed separately below) mirror and are construed consistently with Section 5 of the

---

[11] *See* Alaska Stat. § 45.50.562 (West 2016); Ark. Code Ann. § 4–75–301 (2016); Cal. Bus. & Prof. Code § 167000 (2016); Colo. Rev. Stat. § 6-4-101 (2016); Conn. Gen. Stat § 35-44b (West 2016); Del. Code Ann. tit. 6, § 2113 (West 2016); D.C. Code §§ 28-4502, *et seq.* (2016); Fla Stat. Ann. § 542.32 (West 2016); Haw. Rev. Stat § 480-3 (West 2016); Idaho Code Ann. § 48-102(3) (West 2016); 740 Ill. Comp. Stat. 10/1 to 10/11 (2016); Iowa Code Ann. § 553.1 (West 2016); Kan. Stat. Ann. § 50-163 (2016); Ky. Rev. Stat. Ann. 367.110 (West 2016); La. Rev. Stat. Ann. § 51:121; Me. Rev. Stat. Ann. tit. 10 § 1101 (2016); Md. Code Ann., Com. Law. § 11-202(a)(2) (West 2016); Mich. Comp. Laws Ann. § 445.771 (West 2016); Minn. Stat. § 325D.46, *et seq.* (2016); Miss. Code. Ann. § 75-21-1 (West 2016); Mo. Rev. Stat. § 416.141 (2016); Neb. Rev. Stat. § 59-829 (West 2016); N.H. Rev. Stat. Ann. § 356:14 (2016); N.M. Stat. Ann. § 57-1-15 (West 2016); N.Y. Gen. Bus. Law § 340 (2016); N.C. Gen. Stat. Ann. § 75-1 (2016); Ohio Rev. Code Ann. § 1331.01 (West 2016); Okla. Stat. Ann. tit.79 § 212 (West 2016); Or. Rev. Stat. Ann. § 646.715(2) (West 2016); R.I. Gen. Laws Ann. § 6-36-2(b) (West 2016); Tenn. Code Ann. § 47-25-101 (West 2016); Utah Code Ann. § 76-10-3118 (West 2016); Va. Code Ann. § 59-1 (West 2016); Wash. Rev. Code Ann. § 19.86.920 (West 2016); W.Va. Code Ann. § 47-18-16 (West 2016); Wis. Stat. Ann. § 133.01 (2016).

[12] The state antitrust statutes at issue both here and in *Tamoxifen* are: California, the District of Columbia, Florida, Kansas, Louisiana, Maine, Michigan, Minnesota, New York, North Carolina, West Virginia, and Wisconsin.

FTC Act.[13]  In turn, anticompetitive conduct claims under the FTC Act (the "unfair" prong) are analyzed under the same principles as Sherman Act claims.  *See, e.g.*, *Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1072-76 (11th Cir. 2005) (in overturning FTC's cease-and-desist order, applying Sherman Act cases and analysis); *California Dental Ass'n v. FTC*, 526 U.S. 756 (1999) (same); 2 AREEDA ¶ 302h ("[I]nsofar as sound policy condemns or permits given conduct under the Sherman or Clayton Acts, then sound policy requires the same result under the Federal Trade Commission Act.").  As a result, courts in antitrust cases have dismissed tagalong claims based on the same factual allegations under state unfair trade practices/consumer protection statutes where the complaint failed to state a federal antitrust claim.  *See, e.g.*, *Tamoxifen*, 466 F.3d at 198 (affirming district court's dismissal of state consumer protection claims upon district's court conclusion that plaintiffs failed to state a federal antitrust claim); *R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 199 F. Supp. 2d 362, 396 (M.D.N.C. 2002) ("Because Plaintiffs do not allege any facts that suggest that Defendant's conduct is unlawful beyond the conduct that is the basis for their failed federal [antitrust] claims, Plaintiffs' state common law and statutory claims fail as well."); *see also In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 450–51 (S.D.N.Y. 2008) (dismissing state consumer protection claims and finding that "[the court's] conclusion that Plaintiffs have not adequately alleged [a federal antitrust] violation necessarily precludes

---

[13]  *See* Alaska Stat. § 45.50.545 (2016); Ark. Code Ann. § 4-88-101 (2016); Cal. Bus & Prof. Code § 17200 (2016); Conn. Gen. Stat § 42-110b (West 2016); Fla. Stat. § 501.204(2) (West 2016); Ga. Code Ann. § 10-1-391(b) (West 2016); Iowa Code § 714.16(1)(n) (West 2016); Ky. Rev. Stat. Ann. § 367.175 (West 2016); Mass. Gen. Laws ch. 93A § 2 (West 2016); Me. Rev. Stat. Ann. tit. 5 § 207(1) (2016); Miss. Code. Ann. § 75-24-3(c) (West 2016); Mo. Rev. Stat § 407.010 (2016); 15 Mo. Code Regs. Ann. tit. 15 § 60-8.020 (2016); N.M. Stat. Ann. § 57-12-4 (West 2016); N.C. Gen. Stat. Ann. § 75-1.1 (2016); Okla. Stat. Ann. tit. 15 § 752.14 (West 2016); R.I. Gen. Laws Ann. § 6-13.1-3 (West 2016); S.C. Code Ann. § 39-5-20(b) (2016); Vt. Stat. Ann. tit. 9 § 2453(b) (West 2016).

their attempt to recast that violation as an unfair business practice"), *vacated and remanded on other grounds, sub nom. Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010).

Finally, the consumer protection claims under the laws of Alabama, Louisiana, Massachusetts, Minnesota, Nebraska, New York, Pennsylvania, Tennessee, and Washington should be dismissed for the additional reason that all require fraudulent or deceptive conduct in connection with a consumer transaction.[14]  Plaintiffs do not allege that RBH (or any other defendant for that matter) engaged in any such conduct.  As discussed in detail in the preceding sections, RBH is only alleged to have executed a contract to develop a new product and to have "participated" in "discussions" concerning tablet removal.  *See* Am. Compl. ¶ 12, 71.  Therefore, these allegations do not state a claim for fraud or deceptive conduct under these state statutes. *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 178,

---

[14]  *See* Ala. Code § 8-19-5(27) (2016) (forbidding certain acts or practices relating to deceptive advertisement, representation, and quality of consumer goods or services); La. Rev. Stat Ann. § 51-1401 (2016); *Cheramie Serv. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1059 (La. 2010) (finding an "extremely narrow" range of prohibited unfair activities and requiring a showing of "fraud, misrepresentation, deception, or other unethical conduct") (citation omitted); Minn. Stat. §§ 325D.43, *et seq.* (2016) (listing enumerated prohibited acts involving fraud or deceit); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F.Supp. 2d 160, 189-90 (D. Me. 2004) ("Minnesota's Uniform Deceptive Trade Practices Act prohibits a variety of acts, but all involve deception or misrepresentation."); Neb. Rev. Stat. Ann. § 87-301 (West 2016) (prohibiting specific enumerated actions, all of which involve the misrepresentation of goods or services); N.Y. Exec. Law § 63(12) (2016) (declaring unlawful "persistent fraud or illegality" in the course of conducting business); 73 Pa. Const. Stat. Ann. § 201-2(4) (West 2016) (prohibiting "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding"); *In re New Motor Vehicles*, 350 F. Supp. 2d at 200 (finding the Pennsylvania consumer protection statute "requires fraud or deception" and allegations of conspiracy to prevent less expensive Canadian vehicles from entering the American market insufficient to state a claim); Tenn. Code Ann. § 47-18-101 (West 2016); *Messer Griesheim Indus., v. Cryotech of Kingsport, Inc.,* 131 S.W.3d 457, 469 (Tenn. Ct. App. 2003) ("[T]here must be a deceptive act by the defendant before the defendant can be liable under the [Tennessee Consumer Protection Act.]"); Wash. Rev. Code Ann. § 19.86.020 (West 2016); *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F.Supp.2d 1229, 1232 (W.D. Wash. 2003) ("[F]or conduct to be an unfair or deceptive practice under the [Washington] Consumer Protection Act (CPA), it must have the capacity to deceive a substantial portion of the public.").

189-90, 196-98, 202-03 (D. Me. 2004) (where plaintiffs alleged a conspiracy among automobile manufacturers and dealers to prevent Canadian vehicles from entering the American market, dismissing claims under, *inter alia*, Michigan, Minnesota, New York, and Tennessee consumer protection statutes for failure to allege required fraudulent, deceptive, or unconscionable conduct); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1160-63 (N.D. Cal. 2009) (dismissing New York and West Virginia consumer protection claims in case involving alleged horizontal price fixing conspiracy).

For these reasons, the state law claims should be dismissed.

## V.  PLAINTIFFS FAIL TO ALLEGE SUFFICIENT GROUNDS FOR THE EXERCISE OF PERSONAL JURISDICTION OVER RBH

Although the Court did not reach the issue in the context of dismissing RBH from this litigation the first time, the vague allegations directed at RBH, a UK company, are insufficient grounds on which to base personal jurisdiction.  A court may not exercise jurisdiction over a defendant unless that party had sufficient "minimum contacts" with the forum (here, the United States[15]) to satisfy the due process requirements of the Fifth Amendment. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 201 (3d Cir. 1998) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   Personal jurisdiction may be either general (if the defendant is "essentially at home" in the forum and thus subject to jurisdiction for any claim) or specific (if "the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum"). *Daimler AG v. Baumann*, 134 S. Ct. 746 (2014); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).  As the Supreme Court has stressed, when considering jurisdiction over

---

[15] In a federal antitrust case such as this, "the relevant forum to assess the defendant's contacts is the United States as a whole."  *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 291–92 (3d Cir. 2004).

foreign entities like RBH, courts must exercise particular restraint.  *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

Just as it fails to state a claim, Plaintiffs' woefully insufficient allegation that RBH is "in whole or in part responsible for some or all of the conduct alleged in [the] complaint" is too conclusory to plausibly establish the requisite contacts with the forum.  The same holds for the wholesale allegations of conduct attributed to "Reckitt" purporting to encompass RBH.  *See First Chi. Int'l v. United Exch. Co.,* 836 F.2d 1375, 1378 (D.C. Cir. 1988) ("Conclusory statements such as these, however, [do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction.") (internal quotations omitted); *Luellin v. Gulick*, No. 1:10CV203, 2012 U.S. Dist. LEXIS 40281, at *14 (N.D. W. Va. Mar. 26, 2012) ("A plaintiff cannot establish personal jurisdiction by relying solely on the basis of his own conclusory, speculative assertions."); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.").  And the remaining allegations specific to RBH fall well short of establishing grounds for either general or specific jurisdiction.

### A.      RBH Is Not Subject To General Jurisdiction

A corporation is subject to general jurisdiction only if the contacts between the corporation and the forum are so pervasive that the corporation can be said to be "essentially at home" there.  *Daimler*, 134 S. Ct. at 749; *Orazi v. Hilton Hotels Corp.*, No. 09–cv–05959, 2010 WL 4751728 at *2 (E.D. Pa. Nov. 22, 2010) (general jurisdiction is a "demanding" standard).  RBH is not alleged to have a corporate presence in the United States. *See* Am. Compl. ¶ 12

("[RBH] is a British corporation incorporated under the laws of England and Wales, with its registered office located at 103-105 Bath Road, Slough, Berkshire, SL1 3UH."); *Daimler,* 134 S. Ct. at 760 ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'") (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 922-24 (2011)). While RBH is alleged to be "engaged in the development and manufacture of pharmaceuticals, including Suboxone, and health care products and services made and sold subject to FDA approval," Am. Compl. ¶ 12, the Complaint does not allege that these activities took place within the United States, much less that they are so regular that RBH is "at home" here. *See Lewis v. Cabana Coaches, LLC,* No. 2:11-CV-2507, 2012 WL 246390, at *2 (E.D. Pa. Jan. 26, 2012) (finding no general jurisdiction where plaintiff "failed to allege or provide evidence to suggest that Cabana does any business in [the forum], let alone that its contacts are 'systematic and continuous'").[16]

## B.    RBH Is Not Subject To Specific Jurisdiction

Specific jurisdiction is present only when: (1) the defendant purposely directed her activities at the forum state (purposeful availment); (2) the plaintiff's claim arises out of and relates to those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *See Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007). The allegations that RBH entered into a contract with MonoSol to develop Suboxone film and engaged in other

---

[16] The allegations that RBH "investigates all consumer complaints as to the Suboxone products, trademarked the names for the financial programs to encourage the switch from Suboxone tablets to film, [] obtained patents together with MonoSol related to Suboxone film development …. monitored the taste and quality of Suboxone film, prepared materials for regulatory approval of Suboxone film, manufactured and supplied the ingredients for Suboxone film, and provided grants for the study of Suboxone" also are insufficient. *See* Am. Comp. ¶ 12. The States never say that any of these activities took place within the United States, and in any case, even if domestic, none is so regular and pervasive as to show RBH is "essentially at home" in the forum.

action in connection with developing film, Am. Compl. ¶ 12, are insufficient to show purposeful availment.  Plaintiffs never allege where the contract was executed or performed.  In any case, a single contract within the forum would not justify the exercise of specific jurisdiction.  *See Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant . . . ."); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152-153 (3d. Cir. 1996) (holding that defendant's two in-state contracts did not support the conclusion that the defendant "purposefully availed itself of the privilege of doing business" in the state where the contract was fulfilled).  The vague allegation that RBH "participated in discussions" at an unspecified location, Am. Compl. ¶ 71, is similarly deficient, as it does not show contact with the United States at all, much less activities "specifically directed" here.

Finally, while the Complaint does allege conduct *by Indivior* in the United States (*i.e.*, the removal of tablets from the market, the allegedly sham FDA citizen's petition, and the alleged disparagement of tablets), Plaintiffs cannot impute Indivior's actions in the forum to RBH for the purpose of establishing jurisdiction, even if they adequately plead a conspiracy between them. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *In re Auto. Parts Antitrust Litig.*, No. 2:13-cv-02502, 2015 U.S. Dist. LEXIS 96470, at *59 (E.D. Mich. July 23, 2015) ("The Court has no basis for imputing the actions of one [conspiracy] defendant to another in analyzing jurisdiction . . . .").

Thus, Plaintiffs have failed to allege a relationship between RBH and the forum that would justify the exercise of personal jurisdiction.[17]

## VI.    CONCLUSION

For the reasons set forth above, each of Plaintiffs' claims against RBH should be dismissed with prejudice.

---

[17] For all the same reasons, the exercise of jurisdiction over RBH, a foreign defendant, would not comport with notions of fair play and substantial justice.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Respectfully submitted,

/s/ Mark A. Ford
Mark A. Ford
Peter A. Spaeth
Benjamin N. Ernst
Holly A. Ovington
Mark S. Gordon
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
T: (617) 526-6000

Nancy J. Gellman
Andrew S. Gallinaro
CONRAD O'BRIEN PC
1500 Market Street Suite 3900
Centre Square West Tower
Philadelphia, PA 19102-2100
T: (215) 864-9600

*Counsel for Reckitt Benckiser Healthcare (UK)*
*Limited*

Dated:  December 12, 2016