# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Wisconsin, et. al. v. Indivior Inc. et. al.* | MDL No. 2445<br><br>Master File No. 2:13-MD-2445-MSG<br><br>Case No. 2:16-cv-5073-MSG |
| STATE OF WISCONSIN et. al.<br><br>Plaintiffs,<br><br>v.<br><br>Indivior Inc. f/k/a Reckitt Benckiser Pharmaceuticals, Inc., et. al.<br><br>Defendants. | Civ. A. No. 16-cv-5073 |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RECKITT BENCKISER HEALTHCARE (UK) LIMITED'S MOTION TO DISMISS

Table of Contents

Table of Contents..................................................................................................................... i

Table of Authorities ............................................................................................................... ii

Introduction............................................................................................................................1

Factual Background ...............................................................................................................1

Argument ...............................................................................................................................3

    A. The States sufficiently plead claims against RBH under both the antitrust laws and state
consumer protection statutes. ..............................................................................................3

    B.    The States sufficiently plead claims for monopolization (Count I) and attempted
monopolization (Count II) against RBH by alleging facts against RBH and RB
Pharmaceuticals, who RBH concedes are a single economic entity. .....................................4

        1. The FAC Alleges RBH Possessed and Wielded Market Power. .......................................5

        2. The FAC Alleges Exclusionary Conduct by RBH. .........................................................6

    C. The States sufficiently plead claims for antitrust conspiracy counts (Counts III and IV)
against RBH by alleging facts showing that RBH conspired with MonoSol. .............................7

    D. States' Allege Plausible Claims Under State Law. ...........................................................10

        1. States Antitrust Allegations State Claims Both Individually and in Conjunction with the
Sherman Act. .....................................................................................................................10

        2. The States sufficiently plead consumer-protection claims under state law because product
hopping is inherently deceptive. ........................................................................................13

    E. Personal Jurisdiction Over RBH Comports with Due Process. ...........................................20

Conclusion ...........................................................................................................................23

TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................4

*Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, (3d Cir. 2004)...........................20

*Bostick Oil Co. v. Michelin Tire Corp., Commercial Div.*,
  702 F.2d 1207 (4th Cir. 1983) ............................................................................18

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)..................................................................................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)............................................................................................20

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)..................................................................................4

*Cal Caulfield & Co. v. Colonial Nursing Homes, Inc.*,
  642 F. Supp. 777 (D.Kan. 1986) .........................................................................21

*Chesire v. Coca-Cola Bottling Affiliated, Inc.*,
  758 F. Supp. 1098 (D.S.C. 1990).........................................................................18

*Complete Concepts, Ltd. v. General Handbag Corp.*,
  880 F.2d 382 (11th Cir. 1989) .............................................................................21

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984).................................................................................4, 5, 8, 9

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998)............................5

*Entek Corp. v. Southwest Pipe & Supply Co.*,
  683 F. Supp. 1092 (N.D.Tex. 1988) .....................................................................21

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
  720 F.3d 33 (11th Cir. 2013) ...............................................................................10

*Fineman v. Armstrong World Indus., Inc.*,
  980 F.2d 171 (3d Cir. 1992)..................................................................................9

*FTC v. Actavis, Inc.*,
   133 S.Ct. 2223 (2013) ...................................................................................11, 14

*FTC v. Indiana Federation of Dentists*,
   476 U.S. 447 (1986) ............................................................................................14

*FTC v. Motion Picture Adver. Serv. Co.*,
   344 U.S. 392 (1953) ............................................................................................13

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*,
   988 F.2d 476 (3d Cir. 1993) ...............................................................................20

*Hardin v. DLF Computer Co.*,
   617 F. Supp. 70 (W.D.N.C. 1985) ......................................................................21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................................20

*Int'l Bhd. of Elec. Workers Local Union No. 126 Ret. Plan Trust Fund v. Cablelinks, Inc.*,
   2015 WL 8482831 (E.D. Pa. Dec. 10, 2015) .....................................................22

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1954) ............................................................................................20

*L.C. Williams Oil Co, Inc. v. Exxon Corp.*,
   625 F. Supp. 477 (M.D.N.C. 1985) ....................................................................17

*LePage's Inc. v. 3M*,
   324 F.3d 141 (3d Cir. 2003) .................................................................................7

*Lozano v. AT&T Wireless Servs.*,
   504 F.3d 718 (9th Cir. 2007) ..............................................................................16

*Miller Yacht Sales, Inc. v. Smith*,
   384 F.3d 93 (3d Cir. 2004) .................................................................................21

*Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
   838 F.3d 421 (3d Cir. 2016) .............................................................................6, 7

*New Generation Foods, Inc. v. Spicer's Int'l Common Trust*,
   669 F. Supp. 599 (S.D.N.Y. 1987) .....................................................................21

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) ....................................................................15

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007) ...............................................................................20

*Patterson by Patterson v. F.B.I.*,
    893 F.2d 595 (3d. Cir. 1990)...............................................................................22

*Pennsylvania v. Chesapeake Energy Corp.*,
    1:16-CV-1012, 2016 WL 4267982 (M.D. Pa. Aug. 15, 2016)...............................18

*In re Processed Egg Products Antitrust Litigation*,
    851 F.Supp.2d 867 (E.D. Pa. 2012) .....................................................................19

*R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*,
    199 F. Supp. 2d 362 (M.D.N.C. 2002) .................................................................14

*Schering-Plough Corp. v. FTC*,
    402 F.3d 1056 (11th Cir. 2005) ............................................................................14

*Siegel Transfer, Inc. v. Carrier Express*,
    54 F.3d 1125 (3d Cir. 1995).....................................................................................9

*In re Suboxone Antitrust Litigation*,
    16-CV-563, 2017 WL 36371 (E.D. Pa. Jan. 4, 2017)...............................................7

*In re Suboxone Antitrust Litigation*,
    64 F. Supp. 3d 665 (E.D. Pa. Dec. 3, 2014)...............................................1, 6, 20

*In re Tamoxifen Citrate Antitrust Litig.*,
    466 F.3d 187 (2d Cir. 2005)............................................................................11, 14

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984)......................................................................................22

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403, 91 U.S.P.Q.2d 1609 (Fed. Cir. 2009) .........................................23

*Tri-State Rubbish v. Waste Management, Inc.*,
    875 F. Supp. 8 (D. Me. 1994) ................................................................................12

*True Position, Inc. v. LM Ericsson Tel. Co.*,
    844 F. Supp. 2d 751 (E.D. Pa. 2012) ..............................................................22, 23

*United Food and Commercial Workers Local 1776 & Participating Employers*
    *Health and Welfare Fund, et al. v. Teikoku Pharma USA, Inc., et al.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ....................................................................6

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940)...................................................................................................9

*In re Wellbutrin XL Antitrust Litig.*,
    No. CIV.A. 08-2431, 2009 WL 678631 (E.D. Pa. Mar. 13, 2009)........................5, 9

*Westfield Group v. Campisi,*
    2006 WL 328415 (W.D. Pa. 2006) ....................................................................................19

**State Cases**

*Aryeh v. Canon Bus. Sol's, Inc.,*
    292 P.3d 871 (2013).................................................................................................12, 16

*ASRC Energy Servs. Power and Communications, LLC v Golden Valley Elec.*
    *Assn, Inc.,*
    267 P.3d 1151 (Alaska 2012)..........................................................................................15

*Barquis v. Merchants Collection Ass'n of Oakland, Inc.,*
    496 P.2d 817, 496 P.2d 817 (1972) .................................................................................16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163, 973 P.2d 527 (1999) ............................................................................16

*Ciardi v. Hoffman-La Roche, Ltd.,*
    436 Mass. 53, 762 N.E.2d 303 (2002) ...........................................................................17

*In re Cipro Cases I & II,*
    348 P.3d 845 (2015).........................................................................................................12

*Claybourne v. Imsland,*
    414 N.W.2d 449 (Minn. App. 1987)................................................................................19

*Clayworth v. Pfizer, Inc.,*
    233 P.3d 1066 (Cal. 2010) ..............................................................................................12

*Com. v. Percudani,*
    844 A.2d 35 (Pa. Commw. Ct. 2004) ..............................................................................19

*Comes v. Microsoft Corp.,*
    646 N.W.2d 440 (Iowa 2002) ..........................................................................................12

*Craig & Bishop, Inc. v. Piles,*
    247 S.W.3d 897 (Ky. 2008).............................................................................................17

*Dare To Be Great, Inc. v. Com. of Kentucky, ex rel. Hancock,*
    511 S.W.2d 224 (Ky. 1974) .............................................................................................16

*Christie V. Dalmig,*
    136 Vt. 597, 396 A.2d 1385 (1979) ................................................................................19

*Elkins v. Microsoft Corp.,*
    174 Vt.328, 817 A.2d 9 (2002)........................................................................................11

*Evans v. Utah,*
  963 P.2d 177 (Utah 1998)..................................................................................11

*Hyde v. Abbot Laboratories,*
  473 S.E.2d 680, *disc. rev. denied,* 478 S.E.2d 5 (1996) ..........................................11

*Miller's Pond Co., LLC v. City of New London,*
  873 A.2d 965 (Conn. 2005) ................................................................................13

*Oncor Communications, Inc. v. State,*
  165 Misc.2d 262 (N.Y. Sup. Ct. 1995), aff'd, 218 A.D.2d 60 (3d Dept. 1996) .....................20

*Overstock.com, Inc. v. Gradient Analytics, Inc.,*
  151 Cal. App. 4th 688 (2007) ............................................................................16

*Peabody v. P.J.'s Auto Village, Inc..*
  153 Vt.55, 569 A.2d 460 (1989) .........................................................................19

*Richardson Ford Sales, Inc. v. Johnson,*
  676 P.2d 1344 (1984)......................................................................................17

*Shea v. First Federal,*
  439 A.2d 997 (Conn. 1981) ................................................................................13

*Sperry v. Crompton Corp.,*
  863 N.E.2d 1012 (N.Y. 2007)..............................................................................11

*State v. Black,*
  100 Wash. 2d 793 (1984)...................................................................................19

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
  17 Cal. 4th 553, 950 P.2d 1086 (1998) .................................................................16

*State of California ex rel. Van de Kamp v. Texaco, Inc.,*
  762 P.2d 385 (Cal. 1988) ..................................................................................12

*Weinberg v. Sun Co.,*
  565 Pa. 612, 777 A.2d 442 (2001) .......................................................................20

*Westport Taxi Service v. Westport Transit District,*
  664 A.2d 719 (Conn. 1995) ................................................................................12

**Federal Statutes**

15 U.S.C. § 1........................................................................................*passim*

15 U.S.C. § 1 and 2...............................................................................9, 18

15 U.S.C. § 2...............................................................................................5

15 U.S.C. § 45.............................................................................................................*passim*

**State Statutes**

15 O.S. § 751 *et seq.* ...................................................................................................15

10 M.R.S. § 1101 *et. seq.*............................................................................................12

Alabama Deceptive Trade Practices Act, Ala. Code § 8-9-1 to 8-9-15(1975)...............19

Ark. Code Ann. § 4-88-101 *et seq.*.............................................................................15

Bus. & Prof. Code §§ 17200 et seq...............................................................................16

Conn. Gen. Stat. §§ 28 and 29 .....................................................................................13

Connecticut Antitrust Act .......................................................................................12, 13

Donnelly Act...............................................................................................................11

Iowa Code § 553.2 .......................................................................................................12

Iowa Competition Law .................................................................................................12

Kan. Stat. Ann. 50-163(d)(5).........................................................................................12

Ky. Rev. Stat. Ann. § 367.170........................................................................................16

Mass. Gen. Laws Chapter 93A ...............................................................................17, 19

Minn. Stat. § 325D.44, subd. 2,5 7, 8, 13 .....................................................................19

Mo. Code Regs. Ann. 15 § 60-8.020 .............................................................................17

N.M. Stat. Ann. § 57-12-4 .................................................................................11, 17, 18

Neb.Rev. Stat § 59-1602................................................................................................19

Neb. Rev. Stat. § 87-302...............................................................................................19

New York State Executive Law Section 63(12) .............................................................19

O.C.G.A. §§ 10-1-390, *et seq.* (Fair Business Practices Act)........................................16

Pennsylvania Unfair Trade Practices and Consumer Protection Act.........................18, 19

South Carolina Unfair Trade Practices Act ...................................................................18

Washington State's Consumer Protection Act, RCWA 19.86.020............................19, 20

Wis. Stat. § 133.01 ..................................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 12(b) ...................................................................... 1, 3

**Other Authorities**

Areeda & Hovenkamp, *Antitrust Law* (2d. ed 2003) ................................................ 9, 10

# INTRODUCTION

Defendant Reckitt Benckiser Healthcare (UK) Ltd. ("RBH") moves to dismiss Plaintiff States' First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of personal jurisdiction under Rule 12(b)(2).[1] RBH argues it took no action in furtherance of the alleged product-hopping scheme and that, even if it did, its conduct lacked the minimum contacts with the United States. Neither argument has merit.

In earlier actions in the multi-district litigation, the Direct Purchaser Class Plaintiffs did not oppose RBH's motion to dismiss, and the End Payor Class failed to tie RBH to any of the unlawful actions alleged in their complaint, alleging *only* that RBH engaged in a product-hopping scheme relating to the drug Gaviscon.[2]

The States specifically allege numerous facts demonstrating that RBH played a critical role in Defendants' scheme to switch and monopolize the U.S. Suboxone market.

## FACTUAL BACKGROUND

The States are suing four Defendants: Reckitt Benckiser Pharmaceuticals, Inc. ("RB Pharmaceuticals," now known as Indivior Inc., "Indivior"); Indivior's parent, Indivior PLC ("PLC"); its former sister company in the United Kingdom, RBH; and MonoSol Rx LLC ("Monosol"). The following facts must be taken as true for a motion to dismiss because either the States alleges them or RBH concedes them.

The Defendants have been engaged in the development, marketing, and sale of Suboxone.[3] Suboxone is the brand name for a drug that combines buprenorphine and naloxone

---

[1] Dkt. 141-1, Reckitt Benckiser Healthcare (UK) Ltd.'s Memorandum in Support of its Motion to Dismiss ("RBH Br.") at 2,17.
[2] *In re Suboxone*, 64 F. Supp. 3d 665, 713-4, n. 31 (E.D. Pa. Dec. 3, 2014).
[3] States' First Am. Compl. ¶¶ 2, Nov. 23, 2016, ECF No. 119 ("FAC").

that is used to treat opioid dependency, such as heroin addiction.[4] In the mid-to-late 2000s, Suboxone was facing impending competition from generic drug manufacturers[5]—specifically for the U.S. market.[6] To ward off this impending generic competition, from 2006 into 2013, the Defendants engaged in an elaborate, three-part product-hopping scheme.[7] First, the Defendants

███████████████████████████████████████████████████████

███████[8] Second, they ████████████████████████████████

█████████████████████████████[9] And third they ██████████

███████████████████████████████████████████████████████

███████████[10]

    RBH participated in all three steps of this product-hopping scheme. RBH was involved in ████████████████████████████ Although the FAC refers to "Reckitt" for that allegation,[11] the State uses Reckitt there to mean both RB Pharmaceuticals and RBH[12] because, after meeting with MonoSol, they came up with the plan together.

    RBH took a lead role in step two of the product-hopping scheme: bringing the sublingual Film formulation to market. RBH ████████████████████████████████████

███████████████████████████████████████████

████████████████████████[13] RBH "obtained patents together with MonoSol related to

---

[4] *Id.* ¶ 2.
[5] *Id.* ¶¶ 37, 39-45.
[6] *Id.* ¶ 42 (quoting Reckitt Group's annual reports as saying "The expiry of the Group's exclusive license for Suboxone in the United States in 2009 and in the rest of the world in 2016 could expose the business to competition from generic variants.").
[7] *Id.* ¶¶ 39-115.
[8] *Id.* ¶ 44.
[9] *Id.* ¶ 45.
[10] *Id.*
[11] *Id.* ¶ 44.
[12] *Id.* ¶ 13.
[13] *Id.* ¶ 46.

Suboxone Film development."[14] These patents provided the protection from generic competition for the second step of the product-hopping scheme.[15]  RBH "provided grants for the study of Suboxone" and "prepared materials for regulatory approval of Suboxone Film."[16] It "established the parameters for the timing of the launch and the formulation of Suboxone Film."[17] Further, RBH "trademarked the names for the financial programs to encourage the switch from Suboxone tablets to Film."[18] Once the Film was ready for commercial production, RBH "manufactured and supplied the ingredients for Suboxone Film."[19]

After manufacturing of Suboxone Film began, the Defendants began the third step in the product-hopping scheme. RBH's U.S. sister company, RB Pharmaceuticals, sold the Suboxone Film throughout the United States.[20] Because it was the entity that made and sold the Suboxone tablets,[21] it was also the entity primarily responsible for removing them from the market. But even for this third step of the product-hopping scheme, RBH was involved: ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮[22]

## ARGUMENT

**A.    The States sufficiently plead claims against RBH under both the antitrust laws and state consumer protection statutes.**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[14] *Id.* ¶ 12.
[15] *See, e.g., id.* ¶ 122.
[16] *Id.* ¶ 12.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] RBH Br. 4.
[21] *Id.*
[22] FAC ¶ 71.

is plausible on its face.'"[23]   To determine the sufficiency of a complaint, a court should: (1) "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, ... assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[24]

Here, the States sufficiently plead (a) antitrust claims based on a product-hopping conspiracy, (b) antitrust claims based on monopolizing and attempting to monopolize the buprenorphine-naloxone market, and (c) state-law consumer-protection claims based on the deceptiveness of product-hopping.

**B.     The States sufficiently plead claims for monopolization (Count I) and attempted monopolization (Count II) against RBH by alleging facts against RBH and RB Pharmaceuticals, who RBH concedes are a single economic entity.**

The States allege sufficient facts for its monopolization and attempted monopolization claims.  RBH argues dismissal is warranted because it lacked monopoly power in the relevant market since it does not sell Suboxone, and, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[25] it did not remove the Tablets itself.  These arguments are premised on RBH acting as an independent economic entity for purposes of the antitrust laws.  And it concedes it did not.[26]

The Supreme Court in *Copperweld* held that a corporate parent and its wholly-owned subsidiary are incapable of conspiring under Section 1 of the Sherman Act where "[a] division within a corporate structure pursues the common interests of the whole."[27] Assuaging fears that

---

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[24] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).
[25] *Id.* ¶ 71.
[26] RBH Br. 12-13 ("RHB and RBP (now Indivior) [RB Pharmaceuticals] were, at the relevant times, sister companies under the RB Group, and under the *Copperweld* doctrine two wholly-owned subsidiaries of the same parent cannot conspire with each other for purposes of the antitrust laws.").
[27] *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770 (1984).

4

anticompetitive conduct among intra-corporate members would evade antitrust liability, the Court reassured that "[a]ny anticompetitive activities of corporations and their wholly owned subsidiaries meriting antitrust remedies may be policed adequately without resort to an intra-enterprise conspiracy doctrine. . . the enterprise is fully subject to § 2 of the Sherman Act . . ."[28]

Because RBH concedes that it was a single economic entity for purposes of the antitrust laws with RB Pharmaceuticals,[29] and the States agree, they are together "fully subject to § 2 of the Sherman Act." Their relationship makes RBH's cases, *Wellbutrin*[30] and *Discon*,[31] distinguishable. Unlike *Wellbutrin* and *Discon*, where the defendants were distinct and independent companies engaged in separate market functions, RBH and RB Pharmaceuticals were subsidiaries of the same corporate enterprise actively pursuing a common interest in the product-hopping scheme. For the same reasons as explained in their response to Indivior, the States have stated monopolization and attempted monopolization claims against RBH.[32]

### 1. The FAC Alleges RBH Possessed and Wielded Market Power.

RBH argues that because it has never been a seller in the relevant market,[33] it is "axiomatic" that it could not have monopolized that market.[34] Monopoly power may be "proven through direct evidence of supracompetitive prices and restricted output," or "inferred from the structure and composition of the relevant market."[35] The States allege that RBH directly

---

[28] *Id.* at 777.

[29] RBH Br. 12-13 ("RHB and RBP Inc. (now Indivior) [RB Pharmaceuticals] were, at the relevant times, sister companies under the RB Group, and under the *Copperweld* doctrine two wholly-owned subsidiaries of the same parent cannot conspire with each other for purposes of the antitrust laws.").

[30] *In re Wellbutrin XL Antitrust Litig.*, No. CIV.A. 08-2431, 2009 WL 678631, at *6 (E.D. Pa. Mar. 13, 2009).

[31] *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998).

[32] *See* Memorandum in Opposition to Defendant Indivior Inc.'s Motion to Dismiss, 6-10.

[33] RBH also incorporates by reference MonoSol's argument that the States' alleged relevant product market is implausible, apparently conceding the States' geographic market definition of the United States. RBH Br. at 6 n.1 (citing MonoSol Memorandum in Support of its Motion to Dismiss ("Mon. Br.") at Part III.A). In response, the States' incorporate herein their Memorandum in Opposition to MonoSol's Motion to Dismiss.

[34] RBH Br. 6.

[35] *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir.2001)).

possessed monopoly power in that market because it controlled the production of Suboxone and the patents for the Film.[36]

The States allege that RBH manufactures Suboxone Tablets and the ingredients for Suboxone Film,[37] which are necessary for Suboxone to exist. The States allege that RBH contracted with MonoSol to develop the Film and obtain patents relative to the Film.[38] These claims plausibly allege that RBH directly possessed market power within the United States because it controlled the production and the primary patents for the relevant products.[39]

### 2. The FAC Alleges Exclusionary Conduct by RBH.

RBH argues that the States failed to allege exclusionary conduct because its contract with MonoSol to develop Suboxone Film "simply introduce[ed] a new product on the market [which] . . . does not, by itself, constitute exclusionary conduct."[40] The States incorporate by reference the arguments set forth in Section. II.B. above, and States' Memorandum in Opposition to Defendant Indivior Inc.'s Motion to Dismiss, at Section III.B. that discusses how RBH's and the Reckitt enterprise's exclusionary conduct that goes beyond merely developing a new product.

RBH's reliance on *Mylan Pharm. Inc. v. Warner Chilcott Public Ltd. Co.* ("*Doryx*")[41] is misplaced. As it must, RBH acknowledges *Doryx*' recognition that "introduction of a new product could violate the Sherman Act if, *inter alia*, coercive conduct is present."[42] As this

---

[36] FAC ¶ 12; *United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, et al. v. Teikoku Pharma USA, Inc., et al.*, 74 F. Supp. 3d 1052, 1077 (N.D. Cal. 2014) (It is plausible that plaintiffs could allege . . . that Teikoku possessed market power within the United States because it controlled the production and the primary patents.")
[37] FAC ¶ 12.
[38] *Id.*
[39] *Teikoku Pharma USA, Inc., et al.*, 74 F. Supp. 3d at 1077.
[40] RBH Br. 8 (quoting Class Plaintiffs Opinion, 64 F. Supp. 3d 679, 682).
[41] RBH Br. 8, citing *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 440 (3d Cir. 2016) ("*Doryx*"). See also Class Plaintiffs Opinion at 682.
[42] *Id.*

Court has held, coercive conduct can be established through a series of actions.[43]   When considering whether a product improvement is on balance procompetitive, courts must consider the overall effect of the defendants' scheme in light of "the increase in the defendants' market share, the effects of foreclosure on the market benefits to customers and the defendant, and the extent to which customers felt they were precluded from dealing with other manufacturers."[44] Unlike *Doryx*, which was decided on summary judgment "after a period of exhaustive discovery,"[45] this Court cannot reasonably conclude at this juncture that RBH's actions were procompetitive as a matter of law.

RBH further minimizes its alleged role in the anticompetitive scheme to that of a mere contracting party.

There are ample allegations that RBH was not a mere party to a contract.  The States allege, that RBH engaged in a series of actions, both independently and as part of the Reckitt enterprise, as alleged above that were designed to defeat generic competition in the U.S. Suboxone market.  RBH helped the Reckitt enterprise create a Film it knew would not be AB-rated to Suboxone Tablets.[46]

**C.    The States sufficiently plead claims for antitrust conspiracy counts (Counts III and IV) against RBH by alleging facts showing that RBH conspired with MonoSol.**

RBH admits that the States "allege that RBH entered into an agreement with MonoSol to develop Suboxone Film"[47]—the second step of the product-hopping scheme.  Although RBH

---

[43] *In Re Suboxone Antitrust Litigation*, 16-CV-563, 2017 WL 36371 (E.D. Pa. Jan. 4, 2017) (granting in part and denying in part Indivior's partial motion to dismiss Amneal Pharmaceuticals LLC's ("Amneal") claims) (hereinafter, "Amneal Opinion") at *8 (citing *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003); *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 359 (D.N.J. 2009); *In re Neurontin Antitrust Litig.*, 2009 WL 2751029, at *15; *Abbott Labs. v. Teva Pharm. USA, Inc.*, 432 F. Supp. 2d 408, 428 (D. Del. 2006)).
[44] *LePage's, Inc. v. 3M*, 324 F. 3d at 162.
[45] *Doryx* at 440.
[46] *See, e.g.* FAC ¶¶ 12, 25, 45-56, 69, 85, 150.
[47] RBH Br. 10.

8

argues that the allegations stop there.[48] RBH ignores the allegations that Reckitt, specifically RBH and RB Pharmaceuticals, worked with MonoSol in formulating and implementing a product-hopping scheme.

The States do not allege a conspiracy between RBH and RB Pharmaceuticals. Because they were wholly owned sister companies with a complete unity of interest regarding Suboxone, the States concede that in this case they are properly treated a single economic entity for antitrust purposes under *Copperweld*.[49]

The illegal agreement the States allege was between sister companies, collectively as Reckitt and MonoSol.    They agreed to switch the market to a new, patent-protected formulation.[50] The complaint alleges that ███████████████ [51] to "thwart generic entry, and to maintain Suboxone's market share by extending Reckitt's exclusivity on a co-formulated buprenorphine/naloxone product."[52] Further, sensitive to the timing of generic entry, MonoSol helped Reckitt ███████████████████████████████ [53] ████████████ [54] Even after Film reached the ████████████ and

---

48 *Id.*

49 RBH Br. 12-13 ("RHB and RBP (now Indivior) [RB Pharmaceuticals] were, at the relevant times, sister companies under the RB Group, and under the *Copperweld* doctrine two wholly-owned subsidiaries of the same parent cannot conspire with each other for purposes of the antitrust laws.").

50 FAC ¶ 118 ("Reckitt's conspiracy with MonoSol and its acts, practices, and scheme described herein were for the purposes of, and had the effect of, restraining competition unreasonably by preventing the entry of generic co-formulated buprenorphine/naloxone and destroying the market for the tablet formulation by the time the generic competitors gained FDA approval.").

51 FAC ¶ 47.

52 FAC ¶ 50.

53 FAC ¶ 53.

54 FAC ¶ 61.

market, ████████████████████████████████████ [55] which Reckitt

would eventually file to slow down generic entry.[56]

But the *Copperweld* doctrine has never been stretched to cover an independent company

like MonoSol. Although RBH cites *Siegel Transfer v. Carrier Express*, that case was a summary

judgment opinion that addressed "the concept of a conspiracy between a principal and an

agent."[57] Neither the complaint nor even RBH claims that MonoSol was an "agent." MonoSol

was a separately incorporated company responsible for its own actions.

RBH makes two arguments. First, it cites the development contract between RBH and

MonoSol and argues that such agreements by themselves do not violate the antitrust laws.[58] But

as the allegations above show, the States' claims do not rely on that contract by itself.

Second, RBH claims that there is no other "express agreement," which it says "should

end the inquiry."[59] But for purposes of the antitrust laws, agreements do not need to be written or

even meet contractual requirements.[60] And although RBH casts doubt on agreements between

non-competitors, the Third Circuit has rejected a rule that limited conspiracies to horizontal

competitors: "We note that the Supreme Court has not carved out from section 1 liability a

conspiracy to destroy a competitor by two firms at different levels of distribution."[61] RBH

correctly cites Areeda and Hovenkamp as saying that courts may infer agreements among non-

competitors where there is "an unambiguously express promise on the point of the challenged

---

[55] FAC ¶ 112.
[56] FAC ¶ 107.
[57] *Siegel Transfer, Inc. v. Carrier Express*, 54 F.3d 1125, 1137-38 (3d Cir. 1995).
[58] RBH Br. 10.
[59] *Id.*
[60] *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 179 (1940) (finding a sufficient agreement from "an informal gentlemen's agreement or understanding"); *see also* VI Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1404(2d ed. 2003) ("It is equally clear that there will be an agreement for antitrust purposes even though the challenged arrangement falls short of forming a contract . . . .").
[61] *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 215 (3d Cir. 1992); *see also In re Wellbutrin XL Antitrust Litig.*, No. CIV.A. 08-2431, 2009 WL 678631, at *4-6 (E.D. Pa. Mar. 13, 2009) (finding plaintiffs alleged sufficient evidence that a drug manufacturer and seller conspired to monopolize that drug's market under Section 1 and 2 of the Sherman Act).

action, usually for a quid pro quo."[62] Here, MonoSol unambiguously promised to help drug manufacturers to avoid generic competition by reformulating their drugs using MonoSol's sublingual film.[63] Reckitt accepted that promise and, for MonoSol's help in excluding generic competition, payed fixed payments and royalties based on Suboxone Film sales.[64]

At the motion to dismiss stage allegations need not make any unlawful agreement "more likely than independent action nor need they rule out the possibility of independent action."[65] As such, the States sufficiently alleged that the Reckitt Defendants and MonoSol acted not independently, but rather in concert to monopolize the U.S. Suboxone market.[66] RBH, with the help of MonoSol, an independent company, also engaged in a plan to withdraw Tablets from the market—to ensure generic manufacturers were unable to compete upon market entry.[67]

Consequently, this Court should deny RBH's motion because sufficient facts are pleaded that RBH conspired to monopolize the Suboxone market by entering into and implementing an agreement with MonoSol to develop Suboxone Film and because the agreement's purpose was to monopolize the Suboxone market by foreclosing generic competition.[68]

**D. States' Allege Plausible Claims Under State Law.**

**1. States Antitrust Allegations State Claims Both Individually and in Conjunction with the Sherman Act.**

The States have pleaded Sherman Act claims and consumer law claims that arise from RBH's involvement in the product-hopping scheme and create both federal and state antitrust and state consumer protection liability. To confuse the issue, RBH incorrectly asserts that state law antitrust claims are identical to the Sherman Act. This is not necessarily the case.

---

[62] Areeda & Hovenkamp, *Antitrust Law* ¶ 1402b, *quoted in part by* RBH Br. 10-11.
[63] FAC ¶ 48.
[64] *Id.* ¶¶ 25, 49, 85.
[65] *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 47 (11th Cir. 2013).
[66] FAC ¶¶ 12, 25, 45 – 54, 69, 71, 85.
[67] *Id.* ¶¶ 71 and 118.
[68] *Id.*

Not every State's antitrust law is interpreted in lockstep with the Sherman Act.[69]  As have other states, Wisconsin has codified its' antitrust statutes' liberal construction: "It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition."[70]  As the Utah Supreme Court has stated, "[w]e are guided by the widely accepted principle that antitrust laws should be construed broadly and exemptions should be considered narrowly so as to give effect to their purposes."[71]

North Carolina's Court of Appeals has held that "[s]ince we are not required to construe our antitrust statute in harmony with the federal antitrust laws, we likewise find that the Illinois Brick limitation does not apply in North Carolina."[72]  Vermont's Supreme Court likewise held that Vermont courts are not required to follow federal antitrust law and that indirect purchasers may sue.[73]  Though New York's Donnelly Act is generally construed in light of federal antitrust case law, New York's highest court has recognized that it is "well settled" that New York courts will interpret the Donnelly Act differently "where State policy, difference in the statutory language or the legislative history justify such a result."[74]

Similarly, California's Supreme Court has repeatedly recognized that the Sherman Act has a different scope, history, and interpretation than the Cartwright Act and Unfair Competition

---

[69] The *Tamoxifen* case RBH relies upon has been abrogated.  RBH Br. 14, n. 12; *In re Tamoxifen Citrate Antitrust Litig.,*466 F.3d 187 (2d Cir. 2005) abrogated by *F.T.C. v. Actavis, Inc.,* 133 S.Ct. 2223 (2013).
[70] Wis. Stat. § 133.01.,
[71] *Evans v. Utah,* 963 P.2d 177, 185 (Utah 1998).
[72] *Hyde v. Abbot Laboratories,* 473 S.E.2d 680, 686, *disc. rev. denied,* 478 S.E.2d 5(1996).
[73] *Elkins v. Microsoft Corp.,* 174 Vt.328, 817 A.2d 9 (2002).
[74] *Sperry v. Crompton Corp.,* 863 N.E.2d 1012, 1018 (N.Y. 2007) (quoting *Anheuser Busch, Inc. v. Abrams,* 520 N.E.2d 535, 539 (N.Y. 1988))

11

Law.[75] California law does not require that its antitrust and consumer protection laws be harmonized with the federal Sherman Act.[76]

Kansas' harmonization statute specifically dictates that the Kansas Restraint of Trade Act will not be construed to prohibit "any action or proceeding brought by the attorney general pursuant to authority provided in the [Act], or any other power or duty of the attorney general provided in such act."[77] Thus, any argument that its alignment with the Sherman Act negates its state law claims is wrong. Iowa's Supreme Court has held that Iowa's antitrust harmonization statute is not necessarily consistent with federal law, indicating that "[w]e do not find that Iowa Code §553.2 requires Iowa courts to interpret the Iowa Competition Law the same way federal courts have interpreted federal law. In fact, the harmonization statute specifically states the provision 'shall not be made in such a way as to constitute a delegation of state authority to the federal government.'"[78] While Maine's antitrust act parallels the Sherman Act, the state analog has not been deemed to foreclose liability under state law in the event the federal law provides no relief.[79]

Finally, Connecticut's law is merely "aided by reference to judicial opinions interpreting the federal antitrust statutes. Accordingly, we follow federal precedent when we interpret the act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently."[80] The Connecticut Antitrust Act is not identical to the Sherman Act, and is

---

[75] *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 762 P.2d 385, 396 (Cal. 1988); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1076 (Cal. 2010); *In re Cipro Cases I & II*, 348 P.3d 845, 858 (2015); *Aryeh v. Canon Bus. Sol's, Inc.*, 292 P.3d 871, 877 (2013).
[76] *Id.*
[77] Kan. Stat. Ann. 50-163(d)(5).
[78] *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002).
[79] 10 M.R.S. § 1101 *et seq.*; *Tri-State Rubbish v. Waste Management, Inc.*, 875 F. Supp. 8, 14 (D. Me. 1994) (plaintiff "offered no argument" that the same result should not obtain).
[80] *Westport Taxi Service v. Westport Transit District*, 664 A.2d 719, 728, (Conn. 1995).

substantially more specific.[81]  Moreover, as the Connecticut Supreme Court noted, where a state provision does not have a parallel federal provision, federal case law is not required to be incorporated by virtue of §35-44b and is neither mandatory nor persuasive in interpreting that provision of the Connecticut Antitrust Act.[82]  Here, even if the federal claims based on the Sherman Act were dismissed, the claims under Conn. Gen. Stat. §§ 28 and 29, which have no federal parallel and have not been addressed by defendant, would survive.

### 2. The States sufficiently plead consumer-protection claims under state law because product hopping is inherently deceptive.

The States' consumer protection claims for both unfair and deceptive conduct are sufficient to survive a motion to dismiss.  Dismissal of Sherman Act antitrust claims does not condemn consumer protection claims based on the same conduct, particularly when those claims allege unfair or deceptive practices.  RBH, again, inaccurately portrays the state laws as strictly mirroring their federal counterparts,[83] in an attempt to restrict their proper reach and scope.[84]

As an initial matter, claims under the Federal Trade Commission Act ("FTC Act")[85] are analyzed differently than the Sherman Act.  As the United States Supreme Court has said, "The '[u]nfair methods of competition', which are condemned by § 5(a) of the Act, are not confined to those that were illegal at common law or that were condemned by the Sherman Act."[86]  In fact, the FTC Act was "designed to supplement and bolster the Sherman Act and the Clayton Act... to stop in their incipiency acts and practices which, when full blown, would violate those Acts . . . as well as to condemn as 'unfair method of competition' existing violations of them."[87]  The

---

[81] *See Shea v. First Federal*, 439 A.2d 997, 1006-07 (Conn. 1981).
[82] *Miller's Pond Co., LLC v. City of New London*, 873 A.2d 965 (Conn. 2005).
[83] RBH Br. 14-15.
[84] *Id.* at 16-17.
[85] 15 U.S.C. § 45(a)(1).
[86] *FTC v. Motion Picture Adver. Serv. Co.*, 344 U.S. 392, 394 (1953) (citation omitted).
[87] *Id.* at 394-395 (citations omitted).

standard of "unfairness" under the FTC Act is, "by necessity, an elusive one, encompassing not only practices that violate the Sherman Act and the other antitrust laws, but also practices that the Commission determines are against public policy for other reasons."[88]

RBH attempts without basis to corral the States' consumer claims into their antitrust claims, ignoring that most state consumer-protection law, as well as the FTC Act upon which many are modeled, go far beyond "unfair methods of competition" and include prohibitions against unfair or deceptive conduct. The cases RBH relies upon to argue that dismissal of Sherman Act claims must result in dismissal of state consumer protection claims focus on *unfair competition* under the FTC Act.[89] Even the cases RBH relies on recognize that allegations of facts beyond those necessary to prove antitrust liability, such as deception, can support an independent consumer protection claim.[90]

Moreover, RBH itself observes that it is the "unfairness" prong of the FTC Act that has been subject to a Sherman Act antitrust analysis,[91] suggesting that state claims based on plausible allegations of deception survive. Notably, the States' FAC includes multiple allegations of fraud and deception. The States allege that Reckitt "purposely based its campaign to convert the market on unfounded safety concerns about the Tablets," which "were a sham developed to convince prescribers and payors that the Suboxone Film provided increased safety and efficacy over the Tablets."[92] The States further allege that Reckitt issued a press release advising the

---

[88] *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 454 (1986) (citations omitted).
[89] RBH Br. 15; *See, e.g. Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1072 (11th Cir. 2005) (Our final line of inquiry turns to whether these agreements were indeed an "unfair method of competition" under the FTC Act); see also *Tamoxifen,* 466 F.3d at 198 (2d Cir. 2005) (dismissing state law consumer protection and unfair competition claims "because those claims were based on the same allegations as the plaintiffs' federal antitrust claims."). *Tamoxifen,* as mentioned above, has been abrogated by *F.T.C. v. Actavis, Inc.*, 133 S.Ct. 2223 (2013).
[90] *See, e.g. R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 199 F. Supp. 2d 362, 396 (M.D.N.C. 2002) ("Because Plaintiffs do not allege any facts that suggest that Defendant's conduct is unlawful beyond the conduct that is the basis for their failed federal claims, Plaintiffs' state common law and statutory claims fail as well.").
[91] RBH Br. 15.
[92] FAC ¶ 73.

public and prescribing physicians that it intended to withdraw the Tablets from the market and "falsely stated that the withdrawal was due to the 'pediatric safety issue,'" and that "Reckitt was aware that its assertions of pediatric safety concerns . . . were unfounded."[93]  Additionally, the States' FAC alleges that "Reckitt falsely represented to the FDA and the Buprenorphine Products Manufacturers Group that it would cooperate," but that it "never intended" to cooperate, instead "engaging in the process for the sole purpose of delaying generic approval."[94]

Furthermore, not all state consumer protection laws are interpreted entirely consistently with the FTC Act; while some statutes refer to section 5 of the FTC Act for guidance, particularly in regard to the "unfairness prong," many are interpreted more broadly. For example, unlike Section 5 of the FTC Act, Oklahoma's Consumer Protection Act does not include a particularized prohibition on "unfair methods of competition," but focuses on other impacts to consumers and thus is not co-extensive with the Sherman Act or the FTC Act.[95]

In 2012, the Alaska Supreme Court held that, while its courts give "[d]ue consideration and great weight" to the FTC and federal court interpretations of the FTC Act, the Act does not limit the application of the statute and what constitutes unfair or deceptive is broader than the current FTC test for unfairness.[96]  The Arkansas Deceptive Trade Practices Act is neither patterned after the FTC Act nor does it contain a provision harmonizing its interpretation with the FTC Act.[97]

---

[93] *Id.* ¶ 81.
[94] *Id.* ¶ 95.
[95] 15 O.S. § 751 *et seq.*
[96] *ASRC Energy Servs. Power and Communications, LLC v Golden Valley Elec. Assn, Inc.*, 267 P.3d 1151, 1158-59 (Alaska 2012) (citing *State v. 0 'Neill Investigations*, 609 P.2d 520, 524, 534-535 (Alaska 1980) ("An act or practice is deceptive or unfair if it has the capacity or tendency to deceive" and that "neither actual injury as a result of the deception nor intent to deceive" is required).
[97] Ark. Code Ann. § 4-88-101 *et seq.*; *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 178 (D. Me. 2004).

California's Supreme Court has repeatedly recognized that California's Unfair Competition Law ("UCL") is broader than the FTC Act in its scope, terms, and remedies,[98] and the UCL's prohibitions on "unlawful," "unfair" or "fraudulent" practices are written in the disjunctive, with each of those "prongs" giving rise to a separate and distinct theory of liability. Moreover, the courts have rejected any interpretation of the UCL or even its unfairness prong that is limited to the interpretation of Section 5 of the FTC Act or the bounds of the Sherman Act.[99]

Georgia's claim under its Fair Business Practices Act ("FBPA"),[100] is also not tethered to the States' federal antitrust claims, Georgia's FBPA prohibits "unfair or deceptive acts or practices" and, unlike Section 5 of the FTC Act, does not include a particularized prohibition on "unfair methods of competition."  Georgia's FBPA claim is not subject to dismissal because in addition to the conduct alleged in support of the States' federal antitrust claims, the States have alleged unfair and deceptive conduct that supports Georgia's FBPA claim.

Claims under Kentucky's Consumer Protection Act[101] also survive any possible dismissal of the Commonwealth's antitrust claim.  The terms of the Act are certainly "no less broad" than the FTC Act,[102] and Kentucky courts are not bound by and have not explicitly adopted any FTC case law or guidance or otherwise indicated that the Kentucky Consumer Protection Act must be limited in conformity with the FTC Act.  Indeed, the Kentucky Supreme Court has noted the

---

[98] Bus. & Prof. Code sections 17200 et seq.; *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180–81, 973 P.2d 527 (1999) ("the unfair competition law's scope is broad" and "'intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable "new schemes which the fertility of man's invention would contrive'"); *Aryeh v. Canon Bus. Sol's, Inc.*, 292 P.3d at 877; *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 560, 950 P.2d 1086 (1998); *Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 496 P.2d 817, 829, 496 P.2d 817 (1972).
[99] *Id.* See also, *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 736 (9th Cir. 2007); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715 (2007) ("the California UCL contains no directive to interpret our consumer protection statute consistently with the FTC Act").
[100] O.C.G.A. §§ 10-1-390, *et seq.*
[101] Ky. Rev. Stat. Ann. § 367.170.
[102] *Dare To Be Great, Inc. v. Com. of Kentucky, ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974).

Kentucky General Assembly "created a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts."[103]

Nor does Massachusetts' state claim pursuant to Mass. Gen. Laws ch. 93A rise or fall with the success of federal antitrust claims. RBH ignores that Massachusetts' highest court interpreted both the FTC Act and Massachusetts' state law to cover conduct broader than that captured by the Sherman Act and to apply to "conduct which, although not a violation of the letter or spirit of the antitrust laws, is nevertheless either an unfair method of competition, or an unfair or deceptive act or practice."[104] Massachusetts' highest court established that claims that may fail under federal antitrust law can be asserted under Mass. Gen. Laws ch. 93A.[105]

As to the Missouri Merchandising Practices Act, Missouri regulation makes clear that it is broader than the FTC Act.[106] RBH presents no legal authority to support its argument that Missouri's consumer claims must rise or fall with FTC Act claims and/or Sherman Act.

North Carolina's combined antitrust and consumer protection law is "a comprehensive law designed to include within its reach the federal antitrust laws.[107] Since its broad remedial purpose is to promote ethical business dealings, the law prohibits conduct beyond traditional antitrust concepts."[108] Likewise, because New Mexico's Unfair Practices Act's prohibition on unfair and deceptive and unconscionable trade practices applies different definitions of conduct than the FTC Act,[109] New Mexico's broader statutory definitions of "unfair and deceptive" and

---

[103] *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 904 (Ky. 2008).
[104] *Ciardi v. Hoffman-La Roche, Ltd.*, 436 Mass. 53, 59, 762 N.E.2d 303, 309 (2002).
[105] *See id.* at 66-67, 314.
[106] Mo. Code Regs. Ann. 15 § 60-8.020 (an unfair practice is one that "[o]ffends any public policy" of the FTC, as well as that of state statutes or common law, or that "is unethical, oppressive, or unscrupulous").
[107] *L.C. Williams Oil Co, Inc. v. Exxon Corp.*, 625 F. Supp. 477, 481 (M.D.N.C. 1985) (citation omitted).
[108]*Id.* at 481 (citation omitted).
[109]N.M. Stat. Ann. § 57-12-4; *Richardson Ford Sales, Inc. v. Johnson*, 676 P.2d 1344, 1347 (1984).

"unconscionable" trade practices govern the state UPA claims, not interpretations of the FTC Act.

Pennsylvania courts are also not bound by federal jurisprudence under the Sherman Act and the FTC Act regarding violations under the Pennsylvania Unfair Trade Practices and Consumer Protection Act.[110]

While the South Carolina consumer protection statute looks to the FTC Act for guidance, the United States District Court for South Carolina rejected the notion that that the consumer protection statute must be interpreted as aligned or consistent with the federal antitrust laws.[111] The court has also rejected the notion, as RBH incorrectly asserts, that the South Carolina Unfair Trade Practices Act completely mirrors Section 5 of the FTC Act, indicating that the statute's instruction that "the courts will be guided by the interpretations given" to the federal FTC Act "neither revokes pre-existing South Carolina definitions of unfair or deceptive trade practices, nor binds the Act to the scope of federal law."[112]  Moreover, The State of South Carolina has alleged violations of § 39-5-20, § 39-5-50 and § 39-5-110(a).  Even if the federal claims based on §§ 1 and 2 of the Sherman Act were dismissed, the claims under § 39-5-20, § 39-5-50 and § 39-5-110(a), which have no federal parallel and have not been addressed by RBH, would survive.

Relying on United States Supreme Court precedent, the Washington Supreme Court notes that conduct which threatens an incipient violation of one of the antitrust laws may be a violation

---

[110]*Pennsylvania v. Chesapeake Energy Corp.*, 1:16-CV-1012, 2016 WL 4267982 at 1 (M.D. Pa. Aug. 15, 2016).
[111]*Chesire v. Coca-Cola Bottling Affiliated, Inc.*, 758 F. Supp. 1098, 1100 (D.S.C. 1990)("By the express terms of the statute, UTPA prohibits both unfair or deceptive acts or practices (consumer protection) and anticompetitive conduct (antitrust proscription). The fact that antitrust elements and concepts may be involved does not necessarily make it a federal antitrust case.").
[112] *Bostick Oil Co. v. Michelin Tire Corp., Commercial Div.*, 702 F.2d 1207, 1220 (4th Cir. 1983).

of section 5 of the FTC Act even if it is not a violation of the Sherman Act,[113] and that even from an incipiency theory, conduct which violates the spirit of the antitrust laws may also constitute a section 5 violation even though it does not actually threaten to violate the law.[114] Similarly, no court has interpreted the unfairness prong of the Mississippi statutes as limited to conduct prohibited by the Sherman Act. Vermont's consumer protection statute, 9 V.S.A. § 2453(a) declares unlawful unfair deceptive acts and practices, as well as unfair methods of competition.[115]

Finally, RBH's argument that the consumer protection laws of Alabama, Louisiana, Massachusetts, Minnesota, Nebraska, New York, Pennsylvania, Tennessee, Washington should be dismissed because "all require fraudulent or deceptive conduct in connection with a consumer transaction."[116] The laws cited do not tether the prohibited conduct exclusively to consumer transactions. While RBH does not explain the basis for its assertion that deceptive conduct be in connection to a consumer transaction, this assertion is contradicted by the statutes themselves.[117] Furthermore, most of the consumer protection statutes cited provide for some form of deception as one of several alternative bases for liability.[118]

---

[113] *State v. Black*, 100 Wash. 2d 793, 799 (1984) (citing *Triangle Conduit & Cable Co. v. FTC*, 168 F.2d 175 (7th Cir.1948)).

[114] *Id.* (citing *FTC v. Brown Shoe Co.*, 384 U.S. 316 (1966)).

[115] The elements for unfair acts and deceptive acts are different. *Christie V. Dalmig*, 136 Vt. 597, 396 A.2d 1385 *(VT 1979)* *(*unfairness) *Peabody v. P.J.'s Auto Village, Inc.* 153 Vt.55, 569 A.2d 460(VT 1989)(deceptive acts).

[116] RBH Br. 16.

[117] *See, e.g.,* Mass. Gen. Laws ch. 93A § 2(a) ("in the conduct of any trade or commerce"); New York State Executive Law Section 63(12) ("carrying on, conducting, or transaction of business"); )); *Com. v. Percudani*, 844 A.2d 35, 48 (Pa. Commw. Ct. 2004) (Pennsylvania's Unfair Trade Practices and Consumer Protection Law authorizes the Pennsylvania Attorney General to bring unfair trade practices action irrespective of a consumer transaction); *Westfield Group v. Campisi*, 2006 WL 328415 at *18 (W.D. Pa. 2006) (an act or practice need not be deceptive to be declared "unfair" under the Pennsylvania Unfair Trade Practices and Consumer Protection Law); Washington State's Consumer Protection Act, RCWA 19.86.020 ("in the conduct of any trade or commerce").

[118] See, e.g., Alabama Deceptive Trade Practices Act, Ala. Code § 8-9-1 to 8-9-15(1975) "*unconscionable*, false, misleading, *or* deceptive act[s] or practice[s] in the conduct of trade or commerce" ) (emphasis added); Mass. Gen. Laws ch. 93A § 2(a) (*"Unfair* methods of competition and *unfair* or deceptive acts or practices in the conduct of any trade or commerce" (emphasis added); see also *In re Processed Egg Products Antitrust Litigation*, 851 F.Supp.2d 867, 904 (E.D. Pa. 2012)("no allegations of fraudulent conduct must be pled in order to sufficiently allege a [Massachusetts] G.L. ch. 93A claim."); Minn. Stat. § 325D.44, subd. 2,5 7, 8, 13 (listing relevant violations here,

More to the point, however, as discussed above, the States allege multiple instances of fraud, misrepresentation, or deception.[119] So to the extent the provisions cited require deception, the States allege it.

**E.      Personal Jurisdiction Over RBH Comports with Due Process.**

The States' uncontroverted FAC allegations, as well as the evidence submitted in connection with this memorandum,[120] establish RBH's numerous contacts with the United States in connection with the Suboxone product-hopping scheme to satisfy personal jurisdiction over RBH.

Personal jurisdiction exists if an out-of-state defendant has minimum aggregate contacts with the forum—in an antitrust case, the United States[121]—and exercise of jurisdiction does not violate Due Process.[122] The "minimum contacts" needed to confer specific jurisdiction require evidence that a defendant "purposefully direct its activities at the forum"[123] and the litigation "arose out of, or relates to, those activities."[124] Minimum contacts do not require "physical

---

including provision that any conduct that "creates a likelihood of confusion or misunderstanding" is a violation); *Claybourne v. Imsland*, 414 N.W.2d 449, 451 (Minn. App. 1987) (concluding state need not prove actual confusion, but only a "mere likelihood of confusion"); Neb.Rev. Stat § 59-1602("[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful.") Neb. Rev. Stat. § 87-302 concerns violations of the statute's enumerated deceptive trade practices by an entity in the course of its business, a connection with a consumer transaction is not required; New York State Executive Law Section 63(12) ("persistent fraud *or* illegality in the carrying on, conducting, or transaction of business") (emphasis added); *Oncor Communications, Inc. v. State*, 165 Misc.2d 262, 267 (N.Y. Sup. Ct. 1995), aff'd, 218 A.D.2d 60 (3d Dept. 1996) (violations of federal, state or local law constitute the requisite predicate "illegality" within the meaning of Section 63(12*Weinberg v. Sun Co.*, 565 Pa. 612, 615-618, 777 A.2d 442 (2001) (The Pennsylvania Attorney General in an enforcement action under 73 P.S. §201-4 is not required to plead any element of common law fraud as distinguished from a private plaintiff); Washington State's Consumer Protection Act, RCWA 19.86.020 ("[u]nfair methods of competition and *unfair or* deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.") (emphasis added).

[119] *See,* e.g., FAC ¶¶ 73, 81, 95.

[120] Declaration of Cheryl Lee Johnson ("Johnson Decl.").

[121] *Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298-99 (3d Cir. 2004) (explaining, consistent with Fed. R. Civ. P. 4(k)(2) personal jurisdiction in federal antitrust litigation is based on aggregate contacts in the U.S.).

[122] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954).

[123] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted). In a federal antitrust case such as this, "the relevant forum to assess the defendant's contacts is the United States as a whole." *Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 291.

[124] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

entrance,"[125] and proof of "[a] single contact that creates a substantial connection with the forum may be sufficient" to warrant exercise of jurisdiction.[126]  Indeed, activities surrounding execution of a single contract related to the claims in the complaint has been found repeatedly to support jurisdiction.[127]

While acknowledging RBH's alleged multi-faceted complicity in the product-hopping scheme, RBH quarrels that the "States never say that any of these activities took place within the United States" and "never allege where [RBH's contract with MonoSol] was executed or performed."[128]  However, the FAC expressly alleges that this conduct was directed at the United States: the product-hopping scheme, Suboxone Film development,[129] the Suboxone Film launch,[130] and withdrawal of Suboxone Tablets from the market took place within the United States.[131]  Although RBH quarrels that the States "never allege where [RBH's contract with

---

[125] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (explaining, related out-of-forum contract negotiations or communications by telephone and mail is sufficient); see also Class Plaintiffs Opinion, 64 F. Supp. 3d at 714, (finding, sufficient the Board being "advised of the generic-impairing purpose of the product hop . . . and of the related anticompetitive tactics, and specifically approved the scheme and its purpose")..

[126] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing *Burger King*, 471 U.S. at 472).

[127] See *Complete Concepts, Ltd. v. General Handbag Corp.*, 880 F.2d 382, 388-89 (11th Cir. 1989); *Entek Corp. v. Southwest Pipe & Supply Co.*, 683 F. Supp. 1092, 1098-99 (N.D.Tex. 1988) (minimum contacts established when defendants visited plaintiff's manufacturing plant, signed confidentiality agreements and observed plaintiff's product and processes prior to entering distributor agreement); *New Generation Foods, Inc. v. Spicer's Int'l Common Trust*, 669 F. Supp. 599, 601 (S.D.N.Y. 1987) (same, when non-resident defendants visited forum state and negotiated and executed contract from which cause of action arose, even though visit lasted only one day); *Cal Caulfield & Co. v. Colonial Nursing Homes, Inc.*, 642 F. Supp. 777, 780 (D.Kan. 1986) (same, when contract was executed by parties in forum state, called for continuing relationship between the parties and called required preparatory performance in forum state, even though purpose of contract was to build nursing home in another state); *Hardin v. DLF Computer Co.*, 617 F. Supp. 70, 72 (W.D.N.C. 1985) (same, when contract was executed in forum state and called for plaintiff to ship or receive goods from and receive payment in forum state).

[128] RBH Br. p. 19 n. 16, p. 20.

[129] FAC ¶¶ 12, 25, 46, 47.

[130] *Id.* ¶ 47.

[131] *Id.* ¶ 68.

MonoSol] was executed or performed,"[132] RBH's contract governed the development of Suboxone Film, which MonoSol did in the United States.[133]

Although these contacts are sufficient for specific jurisdiction, the States allege other contacts relevant to this case. RBH's activities in securing trademarks and patents and regulatory approval for Suboxone products to be sold in the United States necessarily were done in the United States.[134]

On a motion to dismiss, the court must draw all reasonable, favorable inferences from the allegations.[135]The burden of establishing jurisdiction rests on the plaintiff, who may offer "sworn affidavits or other competent evidence" in defending a motion to dismiss on jurisdictional grounds.[136] To that end, Plaintiff States submit the Declaration of Cheryl Lee Johnson, attaching documents demonstrating numerous contacts to support jurisdiction of this court over RBH.

RBH approved and paid for each stage of MonoSol's development of the Suboxone Film in the United States, evaluated Film samples for MonoSol, provided MonoSol with active ingredients, data and information.[137] The documents also show that the MonoSol contract was just one part of RBH's plan to withdraw Suboxone tablets from the U.S. market, and that RBH recognized that "to balance any argument for the US setting" that it would "probably also need to think very negatively about the Subutex/Suboxone treatment," "show some sort of safety story"

---

[132] RBH Br. 20

[133] FAC ¶ 14 ("MonoSol…is engaged in the development…of pharmaceuticals, including Suboxone, [in] the United States.")

[134] FAC ¶ 12.

[135] *True Position, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 751, 585-586 (E.D. Pa. 2012) (Plaintiffs' jurisdictional allegations must be taken as true and all facts drawn in their favor.)

[136] *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984) (denying jurisdiction only after noting "that the plaintiff never contended that it was ever denied the opportunity to present whatever evidence it saw fit"); *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d. Cir. 1990) (denying jurisdiction only after Defendants submitted affidavits and answers to interrogatories); *Int'l Bhd. of Elec. Workers Local Union No. 126 Ret. Plan Trust Fund v. Cablelinks, Inc.*, 2015 WL 8482831 at *2 (E.D. Pa. Dec. 10, 2015) (denying jurisdiction only after explaining Plaintiffs "failed to attach any exhibits, affidavits, or other evidence in response to the [Defendants] motion").

[137] Johnson Decl. Exh. 1 ¶ 4.2, 5.1, and pages 15- 22.

and "assess a marketing safety switch strategy."[138] It was RBH that worked on responses to United States' concerns about buprenorphine's environmental impact,[139] and prosecuted patents on Suboxone.[140] RBH secured at least four United States trademarks on the name Suboxone and the patient assistance program designed to coerce the switch from Tablets to Film.[141] It identified strategies, scheduled meetings with the FDA, and prepared filings to secure U.S. regulatory approval of the Suboxone Film.[142]  RBH discussed among other things, the "protection from generics" offered by the film in the United States.[143] RBH also engaged in extensive communications with MonoSol in the United States via email and telephone (including weekly teleconferences)[144] concerning the strength of MonoSol's patents, timing, quality, and U.S. regulatory approval of the Suboxone Film,[145] and paid MonoSol in the United States for its contributions.[146]

While allowed jurisdictional discovery unless "the claim is clearly frivolous,"[147] and RBH has offered no declaration, evidence or even argument as to why or how the exercise of jurisdiction would be unfair or unreasonable, if the Court determines the current record is insufficient to establish jurisdiction over RBH, the States respectfully request that the Court allow jurisdictional discovery.

---

[138] *Id.*, Exh.2.
[139] *Id.*, Exh. 4.
[140] *Id.* ¶ 7.
[141] FAC ¶ 12.  This patenting activity alone may support jurisdiction in the U.S.  See, *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 91 U.S.P.Q.2d 1609 (Fed. Cir. 2009) (Canadian attorney and Canadian intellectual property law firm retained by Canadian client to file and prosecute patent applications in the United States, purposefully directed their activities in the United States and thus had "minimum contacts" sufficient to satisfy due process).
[142] Johnson Decl., Exhs. 7, 9, 11,13, 15, 18, 19, 20;  FAC ¶ 12
[143] *Id.*, Exh. 9; see also Exhs. 7, 8.
[144] *Id.*, Exhs.7, 9, 10, 11-15, 19.
[145] *Id.*.Exhs. 7, 9-15, 19.
[146] *Id.*, Exhs. 5, 6.
[147] *TruePosition, Inc.*, 844 F. Supp. 2d at 588 (where "factual allegations that suggest with 'reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum . . . the plaintiffs right to conduct jurisdictional discovery should be sustained.'")(citing *Toys "R" Us, Inc. v. Step Two, SA*, 318 F.3d 446, 456 (3d Cir. 2003)).

## CONCLUSION

For the reasons stated above, the court should deny Reckitt Benckiser Healthcare UK Limited's motion to dismiss the States' FAC.

Respectfully submitted,

BRAD D. SCHIMEL
Wisconsin Attorney General


GWENDOLYN J. COOLEY
Wisconsin Assistant Attorney General
Admitted *Pro Hac Vice*
Attorneys for Plaintiff States

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-5810
(608) 266-2250 (Fax)
cooleygj@doj.state.wi.us

24