IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION | : : : : | MDL NO. 2445 13-MD-2445 |
| THIS DOCUMENT RELATES TO:, | : : | |
| *Wisconsin, et al. v. Indivior Inc. et al.* Case No. 16-cv-5073 | : : : | |
| **STATE OF WISCONSIN** By Attorney General Brad D. Schimel, *et al.* | : : : : | CIV. A. NO. 16-5073 |
| **Plaintiffs,** v. | : : : : | |
| **INDIVIOR INC. f/k/a RECKITT BENCKISER PHARMACEUTICALS, INC., et al.** | : : : | |
| **Defendants.** | : : | |

**Goldberg, J.**                                                      **January 20, 2021**

**MEMORANDUM**

Defendant Reckitt Benckiser, Inc. ("Defendant") [1] manufactures Suboxone, a drug commonly used to combat opioid addiction. Suboxone previously came in tablet form, but in 2010, citing safety concerns, Defendant effectuated a change in the administration of this drug, switching from tablet to sublingual film. Various purchasers/consumers of Suboxone claimed that this switch was anticompetitive and solely designed to maintain Defendant's market exclusivity—a scheme known as a "product hop." These claims have resulted in multi-district, antitrust litigation before this Court, as well as the certification of a class of direct purchaser Plaintiffs ("DPPs").

---

[1] Reckitt is currently known as Indivior, Inc. In December 2014, Reckitt Benckiser Pharmaceuticals, Inc. was demerged from its prior parent, the Reckitt Benckiser Group PLC, into Indivior PLC. Although Indivior is technically the named defendant in this case, the pleadings and many of the relevant exhibits use the name "Reckitt."

The DPPs recently sought approval of the notice to be issued to the Class regarding the pending litigation. Defendant opposes that notice and seeks disqualification of one of the DPPs' named class representatives and its counsel. For the following reasons, I will deny Defendant's Motion to Disqualify and grant the Motion to Approve the Class Notice.

## I. RELEVANT FACTUAL BACKGROUND[2]

On September 27, 2019, I certified a class of Direct Purchaser Plaintiffs in this antitrust litigation. In re Suboxone Antitrust Litig., No. 13-md-2445, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019). The United States Court of Appeals for the Third Circuit affirmed that decision on July 28, 2020. In re Suboxone Antitrust Litig., 967 F.3d 264 (2020).

On August 24, 2020, the DPPs sought an order approving the form and manner of notice to the Direct Purchaser Class informing them of the pendency of this class action. Defendant opposed the DPPs' Motion. Along with that opposition, Defendant moved to disqualify named Plaintiff Rochester Drug Co-Operative ("Rochester") as a class representative based, in part, upon Rochester's March 22, 2020 initiation of Chapter 11 bankruptcy proceeding. Defendant also requested disqualification of Rochester's counsel, Faruqi & Faruqi, LLP, as class counsel because the firm would no longer be retained by any named class reprseentative.

I thereafter directed the parties to submit a joint update regarding the status of Rochester's bankruptcy proceedings. According to that December 14, 2020 update, Rochester filed its Amended Chapter 11 Plan and accompanying Amended Disclosure Statement on December 8, 2020. The Amended Plan calls for Rochester's assets, including the "Antitrust Actions" to vest in a Liquidating Trust, and for Rochester to wind up its affairs and liquidate its assets "as expeditiously as reasonably possible." (Doc. No. 681, at 2.) The Liquidating Trustee is then granted the authority to "commence and prosecute . . .

---

[2] Rather than re-hashing the complicated regulatory background and factual basis of this case, I incorporate by reference the history set forth in my prior decision certifying a class for both the DPPs and EPPs. In re Suboxone Antitrust Litig., 421 F. Supp. 3d 12 (E.D. Pa. 2019), aff'd, 967 F.3d 264 (3d Cir. 2020).

Antitrust Actions . . . and, without further supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules . . . assign, transfer, compromise, and settle such actions." (Id.)

Under the current schedule, the Bankruptcy Court held a hearing on January 15, 2021, to approve the Amended Disclosure Statement. A Confirmation Hearing is currently scheduled for February 26, 2021. (Id. at 3.)

## II.     DEFENDANT'S MOTION TO DISQUALIFY

Defendant seeks to disqualify Rochester from serving as a class representative on three grounds. First, Rochester's ongoing bankruptcy and "Amended Plan of Liquidation" calls for it to assign away its antitrust claims. Consequently, Defendant posits that Rochester is no longer a member of the class it seeks to represent. Second, Defendant asserts that one of Rochester's creditors is Defendant, and thus as a debtor-in-possession, it owes fiduciary duties to both the DPP class and its creditors, including Defendant. Third, Defendant posits that even before the bankruptcy, Rochester engaged in the criminal distribution of opioid products and currently has a deferred prosecution agreement with the United States Attorney for the Southern District of New York. To the extent that Rochester is disqualified on any or all of these grounds, Defendant also seeks to disqualify Rochester's counsel unless that counsel is engaged by any of the remaining class members.

The DPPs respond that, at present, Rochester remains a debtor-in-possession working to maximize the value of its assets. It further notes that out of Rochester's $96 million in current liabilities to over 2,000 creditors, Rochester owes Defendant only $135,567, making Defendant a minor creditor. Finally, it contends that Rochester's deferred prosecution agreement has no bearing on Rochester's adequacy as a class representative or this litigation.

### A.     Rochester's Ongoing Chapter 11 Bankruptcy

Turning first to issues arising out of Rochester's Chapter 11 bankruptcy, I find no basis on which to disqualify Rochester at this time. As I noted in my class certification decision, "[t]he principal purpose

3

of the adequacy requirement [of Federal Rule of Civil Procedure 23] is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 393 (3d Cir. 2015). This adequacy requirement focuses primarily on whether the class representatives have conflicts of interest with the putative class members. Williams v. Sweet Home Healthcare, LLC, 325 F.R.D. 113, 122 (E.D. Pa. 2018) (citing New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007)). Only a "fundamental" conflict of interest will be sufficient to impact the adequacy analysis. Id. (citing Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012)). "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." Dewey, 681 F.3d at 183 (internal quotation marks omitted).

Here, the question before me is whether a named plaintiff in bankruptcy can serve as a class representative. The leading case on this issue, and the one on which Defendant relies heavily, is the Seventh Circuit decision in Dechert v. Cadle Company, 333 F.3d 801 (7th Cir. 2003). Defendant posits that Dechert stands for the proposition that a class representative's bankruptcy, especially one where one of the defendants is a creditor, "creates an intractable conflict of interest between the representative's fiduciary duties to its creditors and its duties to absent class members." (Def.'s Mot. to Disqualify 7.)

I find that Defendant takes a myopic view of Dechert's holding. In Dechert, the sole named plaintiff, Judy Oyler, brought a putative class action under the Fair Debt Collection Practices Act. Id. at 802. Shortly before filing the suit, Oyler declared bankruptcy under Chapter 7 of the Bankruptcy Code. When the trustee in bankruptcy discovered her pending class action suit, he had himself substituted for Oyler and then asked the district court to certify the suit as a class action with him (the trustee) as the only class representative. Id.

The Seventh Circuit de-certified the class, finding that the trustee in bankruptcy was not an adequate class representative. Id. at 802–03. The Court remarked that "[w]hen the named plaintiff is a fiduciary . . . he cannot just 'go along' with the class lawyer," but rather "has a duty to seek to maximize

4

the value of his claim, and this duty may collide with his fiduciary duty as class representative . . . to represent all members of the class equally." Id. at 803. The court went on to note that such a collision was "especially likely in a case in which the fiduciary is a trustee in bankruptcy, because class-action litigation tends to be protracted yet the Bankruptcy Code requires the trustee to complete his work expeditiously." Id. at 803 (citing 11 U.S.C. § 704(1)). Ultimately, the Court found that Oyler's trustee had a fiduciary obligation exclusively to the estate in bankruptcy and to Oyler's unsecured creditors. Id. at 802. Because Oyler had only a small stake in the class action, the unsecured creditors would derive little to no benefit from a judgment or settlement and, thus, the trustee had a disincentive to fully prosecute the class action. Id. at 803; see also In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig., 375 B.R. 719, 727–28 (S.D.N.Y. 2007) (citing Dechert and declining to let trustee in Chapter 7 bankruptcy serve as sole class representative because of conflicts).

Notably, however, the Seventh Circuit declined to "lay down a flat rule that a trustee in bankruptcy (or, what is the equivalent, a debtor in possession) can never be a class representative." Id. at 803. It recognized that "[t]here may be cases in which the expected recovery of individual class members is substantial and only a fiduciary is available to be the class representative." Id. at 803. The Court further acknowledged that although an actual conflict existed because one of the defendants was one of Oyler's unsecured creditors, that conflict would be obviated if there were other named plaintiffs in the class action who served as class representatives. Id. at 804.

Relying on Dechert, courts have reached different conclusions on this issue depending on the specific circumstances. Recently, the United States District Court for the District of Massachusetts confronted whether the same party at issue here, Rochester, could serve as the sole class representative in a putative antitrust class action against two pharmaceutical companies in light of its ongoing Chapter 11 bankruptcy proceedings. In re Intuniv Antitrust Litig., No. 16-12653, 2020 WL 3840901 (D. Mass. July 8, 2020). In Intuniv, a class action brought solely by Rochester, was certified by the district court. Id. at *1–2. Subsequently, Rochester filed for the current Chapter 11 bankruptcy, owing over $100 million in

5

total. Id. at *2. Citing to Dechert, the Massachusetts District Court noted that Rochester had conflicting duties: one to maximize the value of its assets and the value of the lawsuit for the benefit of its creditors, and one to fairly and adequately protect the interests of the class. Id. at *5. The District Court observed that the conflict was more pertinent because the defendants were significant creditors of Rochester's bankruptcy estate. Id. Moreover, the District Court noted that although a Bankruptcy trustee may be an appropriate class representative so long as it is not the only class representative, Rochester was, in fact, the only class representative for the class in that matter. Id. (citing cases). Finally, the District Court remarked that, "there may be cases in which the representative plaintiff's debt to a defendant would be insignificant enough that it would not undermine the plaintiff's adequacy, particularly if the representative plaintiff was sharing the role with another plaintiff." Id. at *6. However, the approximate $2 million owed by Rochester to the defendants, combined with the fact that it was the sole representative plaintiff, convinced the District Court to not allow Rochester to continue as a representative. Id.

In In re Zetia (Ezetimibe) Antitrust Litig., No. 18-md-2836, 2020 WL 3446895 (E.D. Va. June 18, 2020) report and recommendation adopted by 2020 WL 4917625 (E.D. Va. Aug. 21, 2020), the United States District Court for the Eastern District of Virginia also considered Rochester's adequacy as a class representative and reached the opposite conclusion. In that matter, Rochester was one of several proposed class representatives for a putative antitrust class action. Id. at *27. By the time the plaintiffs moved for class certification, Rochester had already filed for its current Chapter 11 bankruptcy. Id. at *23. The District Court certified the class, finding that despite the bankruptcy proceedings, Rochester was an adequate class representative. Id. at *27. It held, that "[a]s an initial matter, the Chapter 11 proceeding does not automatically render [Rochester], a debtor-in-possession, an inadequate class representative." Id. at *26 (citing cases). The Virginia District Court noted that Dechert involved a Chapter 7 liquidation bankruptcy wherein the Chapter 7 trustee owed a duty to "close [the] estate expeditiously," while a Chapter 11 debtor, like Rochester, did not have a duty of expedience. Id. (noting that "this focus on

6

expedience in the Chapter 7 setting factored into inadequacy findings" in Dechert).[3] The Court further stated that while the defendants were creditors of Rochester, their combined claims made up less than five percent of Rochester's total liabilities. Id. at *26. By comparison, Rochester's claim in the class action was substantial, seeking $40.5 million of the class's total alleged damages of nearly $5 billion. Id. Finally, the District Court observed that Rochester was not the only class representative, and it had a large depth of experience in litigating class actions. Id. at *27. Ultimately, the District Court concluded that Rochester's "strong interest in vindicating its fairly substantial $40.5 million claim; Defendants' comparatively small value of unsecured claims against [Rochester]; and [Rochester's] proven history of serving as an adequate class representative in similar class actions" made it "an adequate class representative in this case despite its ongoing Chapter 11 bankruptcy proceeding." Id.

After careful consideration of the Zetia, Intuniv, and Dechert cases and the facts before me, I will, for several reasons, decline to disqualify Rochester as a class representative.

First, the mere existence of the Chapter 11 bankruptcy proceeding does not render Rochester, as a debtor-in-possession, an inadequate class representative. Dechert, 333 F.3d at 803. "Courts have never held that bankruptcy filing automatically renders an otherwise appropriate class representative inadequate. Indeed, several courts have certified class actions prosecuted by named plaintiffs involved in bankruptcy." DeStefan v. Frito-Lay, Inc., No. 10-112, 2011 WL 13176229, at *5 (C.D. Cal. June 6, 2011) (citing Wanty v. Messerly & Kramer, P.A., No. 05-350, 2006 WL 2691076, at *1 (E.D. Wis. Sept. 19, 2006) ("The fact that the plaintiffs filed for bankruptcy, therefore, does not demonstrate that their interests are different from those of the class . . ."); Wilborn v. Dun & Bradstreet Corp., 180 F.R.D. 347, 355–57 (N.D. Ill. 1998) (finding a bankruptcy debtor to be an adequate representative)).

---

[3] Defendant argues that Zetia distinguished Dechert on the erroneous assumption that Rochester was reorganizing rather than liquidating in its Chapter 11 case. However, regardless of whether a debtor seeks to reorganize or liquidate in Chapter 11, there is no duty of expediency on a Chapter 11 debtor. Accordingly, Zetia was correct to distinguish Dechert which involved a Chapter 7 bankruptcy proceeding, which imposes a duty of expediency on the Chapter 7 trustee, as opposed to a Chapter 11 bankruptcy, which contains no duty of expediency on a debtor. Id. at *26. Nothing in Zetia indicates that the District Court focused on the distinction between reorganization and liquidation as a basis for the its decision.

Second, it is well established that a conflict used to disqualify a class representative must be more than "merely speculative or hypothetical" and "will not be sufficient to defeat class action unless that conflict is apparent, imminent, and on an issue at the very heart of the suit." In re Cmty Bank, 795 F.3d at 395 (quoting Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:58 (5th ed. 2011)). No such imminent conflict exists here. As of the end of September 2020—when the parties finished briefing the current motion—Defendant believed that the winding up of Rochester's affairs would occur by year's end. As of the December 14, 2020 status report from the parties, however, the final Confirmation Hearing in the Bankruptcy Court has been moved to February 26, 2021. These dates remain fluid, rendering Rochester's final liquidation date unclear. At present, Rochester stands as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code, meaning that Rochester remains in possession of its assets and continues to operate its business. Should the need arise, the Liquidating Trustee may later move to substitute itself for Rochester as a named plaintiff. See Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 437 (3d Cir. 1993) (holding that antitrust claims can be expressly assigned).

Third, unlike the debtor in Dechert, who had filed for Chapter 7 bankruptcy, Rochester has filed for Chapter 11 bankruptcy. As noted in Zetia, this distinction is critical because a Chapter 7 trustee owes a duty to "close [the] estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704(a)(1). This duty of "expeditiousness" can create a conflict between a trustee's duties as a fiduciary and his/her duties as a class representative "because class-action litigation tends to be protracted yet the Bankruptcy Code requires the trustee to complete his work expeditiously." Dechert, 333 F.3d at 803; accord Merrill Lynch & Co., 375 B.R. at 727 (duty of expeditiousness imposed on Chapter 7 trustee creates a conflict with the duty to litigating a protracted antitrust lawsuit). By contrast, a Chapter 11 bankruptcy—as is the case here—imposes no duty of "expeditiousness" on the debtor. See 11 U.S.C. § 1106. Indeed, Rochester's Amended Plan and Disclosure Statement in Bankruptcy Court grants the Liquidating Trustee the authority to "commence and prosecute . . . Antitrust Actions . . ., and,

8

without further supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules . . . assign, transfer, compromise, and settle such actions." (ECF No. 681, at 2.) It further provides that "the orderly transition to a Liquidating Trust provides a continued working relationship with [Rochester's] antitrust counsel and helps ensure the claims in the portfolio are effectively prosecuted." (Id.)

Fourth, Rochester's duty as a debtor-in-possession aligns with its role as a class representative. In Chapter 11 cases where the debtor acts as the debtor-in-possession (*i.e.*, the debtor's management), the debtor maintains a fiduciary duty to maximize the value of the bankruptcy estate. Official Committee of Unsecure Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 575 (3d Cir. 2003); see also In re IPofA W. Oaks Mall, LP, No. 07-33649, 2007 WL 3223295, at *3 (Bankr. E.D. Va. Oct. 29, 2007) (noting that debtors-in-possession owe a fiduciary duty to "maximize the Debtors' estates for the benefits of the Debtors' creditors"). Rochester's bankruptcy estate expressly includes Rochester's antitrust class action against Defendant and, thus, Rochester must maximize the value of its claims, which necessarily include those of the class members. The Amended Disclosure Statement filed by Rochester estimates that by vesting its claims in a Liquidating Trust—as opposed to a Chapter 7 trustee who would immediately liquidate the remaining assets—Rochester can achieve a 23% higher recovery on its remaining antitrust claims. (ECF No. 681, at 2.)

Fifth, while I acknowledge that a conflict exists by virtue of the fact that Defendant is one of Rochester's creditors, because of the small amount owed to Defendant, I do not find that it is a "fundamental" conflict of interest. For example, in Merrill Lynch, the court found a fundamental conflict where the defendant held over $5 million of the plaintiff estate's approximately $7.5 million in total unsecured claims. Id. at 723. By contrast, in Zetia, the court found no conflict where the defendants' combined unsecured claims against Rochester totaled $5,175,000, which was only 6% of Rochester's total unsecured claims, and less than 5% of Rochester's total liabilities. Zetia, 2020 WL 3446895, at *26. Here, Rochester represents, and Defendant does not dispute, that Defendant's unsecured claim against

9

Rochester is $135,567, out of a total of $96 million in current liabilities to over 2,000 creditors, *i.e.* 0.14% of Rochester's total liabilities.  Such a small liability owed to Defendant does not plausibly suggest that Rochester would less than vigorously advocate its substantial antitrust claims against Defendant at the expense of its other creditors and the class members, both of whom stand to benefit from a large antitrust recovery.

Sixth, one of the largest concerns in Dechert and Intuniv was that the debtor was the sole class representative.  In Dechert, the court found that no conflict would exist "if one of the other class members were the named plaintiff" because the trustee would have no actual control over the class litigation.  Dechert, 333 F.3d at 804.  In Intuniv, the court commented that "[e]ven those courts that have rejected Dechert's reasoning have found that a bankruptcy trustee may be an appropriate class representative so long as it is not the only class representative." Intuniv, 2020 WL 3840901, at *5 (citing In re Rail Freight Surcharge Antitrust Litig., 287 F.R.D. 1, 34 (D.D.C. 2012) ("[O]ther courts have allowed [a] bankruptcy trustee to act as a class representative] where, as here, 'an additional representative [is designated] to appear as plaintiff along with the Trustee . . . .'" (further quotations omitted))).  Here, by contrast, Rochester is one of four class representatives.  Its lawyers are one of three law firms designated as class counsel and, thus, Rochester will not have full control over the class action.

Finally, I must consider the experience that Rochester brings to this case.  Rochester has a "proven history of serving as an adequate class representative" in pharmaceutical antitrust cases, and has served in several over the past decade. Zetia, 2020 WL 3446895, at *24, 27 (citing In re Niaspan Antitrust Litig., 397 F. Supp. 3d 668, 680–81 (E.D. Pa. 2019), In re Namenda Direct Purchaser Antitrust Litig., 331 F. Supp. 3d 152, 205 (S.D.N.Y. 2018); Am. Sales Co. v. Pfizer, Inc., No. 14-361, 2017 WL 3669604, at *12–13 (D. Mass. July 28, 2017); Lidoderm Antitrust Litig., No. 14-md-2521, 2017 WL 679367, at *15 (N.D. Cal. Feb. 21, 2017); Teva Pharms. USA, Inc. v. Abbott Labs., 252 F.R.D. 213, 226–27 (D. Del. 2008)).

In short, while I recognize that Rochester's precarious financial situation is not ideal for a class representative, I nonetheless remain confident that Rochester's established history of prosecuting antitrust class actions, its strong interest—both as a debtor-in-possession and as class representative—in pursuing the antitrust claims, the involvement of other class representatives, and the relatively minimal conflict resulting from Rochester's unsecured debt to Defendant weigh against disqualification of Rochester as a class representative. Accordingly, I will deny Defendant's Motion on this ground.

### B.     Rochester's Deferred Prosecution Agreement

Alternatively, Defendant argues that Rochester should be disqualified because Rochester engaged in criminal conduct regarding the distribution of Suboxone. Rochester has admitted that, from 2012 until March 2017, it sold increasingly large amounts of controlled substances to pharmacy customers it knew, should have known, or willfully avoided learning were dispensing those controlled substances for illegitimate purposes. Rochester has formally admitted its conduct in a deferred prosecution agreement ("DPA") with the United States attorney for the Southern District of New York and conceded that its conduct violated specified criminal statutes. As a result, Defendant argues that Rochester will likely be unwilling to testify at trial, as it did in another class action for which it was a class representative.

I disagree and find that, even given the pending bankruptcy proceedings, the criminal action against Rochester does not render it an inadequate class representative. Although credibility and honest dealing in litigation may inform a proposed class representative's adequacy, the adequacy requirement should "be assessed in light of the class representative's conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record." In re Intuniv Antitrust Litig., No. 16-12653, 2019 WL 4645502, at *8 (D. Mass. July 8, 2020) (internal quotations omitted). The adequacy inquiry focuses on "improper or questionable conduct arising out of or touching upon *the very prosecution of the lawsuit*." Zetia, 2020 WL 3446895, at *23 (quoting Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 364 (E.D.N.Y. 2009) (emphasis added)). The conduct raised in the DPA has no bearing on the antitrust allegations pressed in the current suit. See

11

Intuniv, 2020 WL 3840901, at *7 (expressly noting that Rochester's deferred prosecution agreement has no impact on whether it is an adequate class representative).

Defendant does not argue that the subject matter of the DPA is relevant to the present antitrust case. Likewise, it admits that, standing alone, Rochester's criminal history is not enough to disqualify it as a class representative. Rather, Defendant argues that, along with the bankruptcy, it is additional "baggage" that class members do not need. (Def.'s Mot. to Disqualify 10.) This argument is simply a matter of opinion and does not go to the heart of the adequacy inquiry.

For all of the foregoing reasons, I will deny Defendant's Motion to Disqualify Rochester as a class representative.

### III. DPP'S MOTION TO APPROVE THE FORM AND MANNER OF NOTICE TO THE DIRECT PURCHASER CLASS

I now consider Plaintiff's Motion to Approve the Form and Manner of Notice to the Direct Purchaser Class. This Notice is to be sent to all potential members of the certified Direct Purchaser Class informing them of the pendency of the class action. The DPPs attach the proposed form of Notice and indicate that the Notice is to be sent by U.S. First Class mail by RG/2 Claims Administration LLC, an experienced claims administrator.

Defendant objects to the form of Notice on two grounds: (1) the Notice lists Rochester as a class representative, and (2) the proposed Notice sets out the DPPs' allegations in great detail, but does not state Defendant's defenses beyond a generic denial. Having already determined that Rochester is an adequate class representative, I focus solely on Defendant's second argument—that the proposed Notice fails to state Defendant's defenses.

Under Federal Rule of Civil Procedure 23(c)(2)(B),

> For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic

>means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>
>**(i)** the nature of the action;
>**(ii)** the definition of the class certified;
>**(iii)** the class claims, issues, or defenses;
>**(iv)** that a class member may enter an appearance through an attorney if the member so desires;
>**(v)** that the court will exclude from the class any member who requests exclusion;
>**(vi)** the time and manner for requesting exclusion; and
>**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed Notice, under the heading of "What is this lawsuit about?", states the following:

>Direct Purchaser Class Plaintiffs allege that Defendant violated federal antitrust laws by engaging in unlawful conduct to delay and impair competition by generic bioequivalent versions of Suboxone® tablets. Direct Purchaser Class Plaintiffs allege that Defendant engaged in an unlawful, multifaceted scheme to destroy demand for Suboxone® tablets and over to Reckitt's new Suboxone® film product, in order to force Direct Purchaser Class Plaintiffs and members of the Class (defined below) to purchase branded Suboxone® film instead of generic bioequivalent versions of Suboxone® tablets (which Plaintiffs allege were less expensive), once they became available on the market.  Direct Purchaser Class Plaintiffs also allege that, in order to give itself more time to destroy demand for Suboxone® tablets and move sales over to Suboxone® film, Defendant delayed the market entry of generic Suboxone tablets by manipulating FDA's Risk Evaluation and Mitigation Strategy process.  Direct Purchaser Class Plaintiffs allege that they and the other members of the Class were injured by being overcharged because of losing the opportunity to purchase less expensive, generic bioequivalent versions of Suboxone® tablets in place of the more expensive branded Suboxone® tablets and film, and by paying higher prices for Suboxone® tablets.
>
>Defendant denies these allegations, and denies that any Class member is entitled to damages or other relief.  Defendant also denies that any of its conduct violated any applicable law or regulation.  No trial has been held.

(ECF No. 641-2.)

Defendant contends that the Notice's failure to state its defenses beyond a generic denial is contrary to the requirements of Rule 23(c)(2)(B)(iii) and "harmful to [Defendant] (though inherent to the

13

class certification process) that DPPs' false and unproven accusations will be circulated, under the imprimatur of a federal court, to all of [Defendant's] direct customers." (Def.'s Opp'n to Notice 2.) Defendant therefore requests that the "Defendant denies . . ." paragraph be replaced with the following:

> Indivior states that Suboxone® Film possesses innovative product attributes that led the overwhelming majority of patients and physicians to prefer Film over tablet products. It is Indivior's view that Film became successful because of these product attributes and because Film was offered at affordable and reasonable prices. Indivior denies that it coerced anyone to take, prescribe, or pay for Film. Indivior therefore denies Plaintiffs' allegations of unlawful activity, and denies that any Class member is entitled to damages or other relief.
>
> No trial has been held.

(Id.)

Such an addition is unnecessary. Federal Rule of Civil Procedure 23(c)(2)(B)(iii) requires only that the notice "clearly and concisely state in plain, easily understood language . . . the class claims, issues, or defenses." "The amount of information on defenses that must be presented is minimal: 'A general statement that the defendants have denied liability will suffice or it may be more detailed and specific, which is especially suitable when affirmative defenses have been presented.'" Van Horn v. Nationwide Prop. & Cas. Ins. Co., No. 08-605, 2009 WL 773869, at *4–5 (N.D. Ohio. Mar. 19, 2009) (quoting 3 Newberg on Class Actions § 8:31). "The Rule itself does not explicitly require the notice to include a description of the defenses." Id.; see also Fed. R. Civ. P. 23 advisory committee's note (2003) ("The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members.").

Guided by these principles, I find that Defendant's proposed "counterbalancing" statement is neither required nor warranted here. Indeed, the Rule's demand for a "clear[] and concise[] statement of the case in "plain, easily understood" language counsels away from including such language. Accordingly, I will grant the DPPs' Motion to Approve the Form and Manner of Notice to the Direct Purchaser Class.

An appropriate Order follows.