**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE SUBOXONE (BUPRENORPHINE** | : | **MDL NO. 2445** |
| **HYDROCHLORIDE AND NALOXONE)** | : | **13-MD-2445** |
| **ANTITRUST LITIGATION** | : | |
| | : | |
| **THIS DOCUMENT RELATES TO:,** | : | |
| | : | |
| *Wisconsin, et al. v. Indivior Inc. et al.* | : | |
| Case No. 16-cv-5073 | : | |
| | : | |
| **STATE OF WISCONSIN** | : | |
| **By Attorney General Brad D. Schimel,** *et al.* | : | |
| | : | **CIV. A. NO. 16-5073** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **INDIVIOR INC. f/k/a RECKITT BENCKISER** | : | |
| **PHARMACEUTICALS, INC., et al.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**Goldberg, J.**                                                            April 15, 2021

**MEMORANDUM OPINION**

Defendant Indivior, Inc. manufactures Suboxone, a drug commonly used to combat opioid addiction. Suboxone previously came in tablet form, but in 2010, citing safety concerns, Defendant effectuated a change in the administration of this drug, switching from tablet to sublingual film. Various purchasers/consumers[1] of Suboxone claimed that this switch was anticompetitive and solely designed to maintain Defendant's market exclusivity—a scheme known as a "product hop." These claims have resulted in ongoing multi-district, antitrust litigation before this Court, as well as the certification of a class of direct purchaser Plaintiffs ("DPPs").

---

[1]     The Plaintiffs are comprised of a class of Direct Purchasers of Suboxone, a class of End Payors of Suboxone, and a group of States' Attorneys General.

Almost eight years into this litigation, the DPPs now move for leave to file a Third Amended Class Action Complaint.  For the following reasons, I will deny the DPPs' Motion.

## I.        RELEVANT FACTUAL BACKGROUND

This action was originally commenced in June 2013, and the last operative Complaint—the Second Amended Complaint—was filed on April 13, 2015.  On February 22, 2021, the DPPs filed a Motion for Leave to File a Third Consolidated Amended Class Action Complaint ("Proposed Complaint").

The Proposed Complaint seeks to plead additional antitrust theories and add three new Defendants to the case:  Reckitt Benckiser Group, plc ("RBG"), Indivior plc ("Indivior plc"), and Indivior Solutions Inc. f/k/a Reckitt Benckiser Pharmaceutical Solutions ("Indivior Solutions").  The Proposed Complaint contends that these three entities, through either their pervasive domination of Defendant or as the alter ego of Defendant, participated in the same overarching scheme to monopolize that is currently being pursued against Defendant in the ongoing MDL action.  According to the DPPs, these new entities have been siphoning large amounts of money—all of which were derived from Suboxone sales—from Defendant, leaving Defendant grossly undercapitalized and incapable of satisfying any judgment that could be rendered in the DPP Class's favor.  All told, the Proposed Complaint adds three additional defendants, three new causes of action, including a conspiracy claim, and 222 new pararaphs.

On March 2, 2021, following a conference with the parties, I directed both Defendant and RBG to file responsive letter briefs addressing the elements of undue delay/bad faith and prejudice.

## II.       DISCUSSION

Both Defendant and RBG argue that any new amendment to the Complaint has been unduly delayed and would cause unfair prejudice.  Defendants correctly note that fact and expert discovery is closed, <u>Daubert</u> motions have been litigated and decided, and the case is at the summary judgment

2

stage.  Defendants posit that allowing a third amended complaint would require the Court to reopen discovery and effectively restart the case.

Federal Rule of Civil Procedure 15 sets forth a liberal approach to pleading, and "[t]he court should freely give leave when justice so requires.  Fed. R. Civ. P. 15(a)(2); see also Spartan Concrete Prods., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019).  "The policy favoring liberal amendments of pleadings, however, is not unbounded."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).  The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court.  Foman v. Davis, 371 U.S. 178, 182 (1962); Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).  A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Lake, 232 F.3d at 373 (citing Foman, 371 U.S. at 182–83).  "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment."  Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (internal quotation marks omitted).

"The 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend."  Mullin v. Balicki, 875 F.3d 140, 151 (3d Cir. 2017).  "While simple delay cannot justify denying leave to amend by itself, delay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave."  Id.  "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend."  Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008) (citations omitted).  Thus, a review of the question of undue delay focuses on "the movant's reasons for not amending sooner," and the court "balance[s] these reasons

3

against the burden of delay on the District Court." Id. (internal quotations omitted). "Delays measured in many months or years are particularly problematic. In contrast, delays of shorter duration, measured in terms of a few months, raise lesser concerns." Scales v. Midland Funding, LCC, No. 18-1514, 2020 WL 1237953, at *4 (M.D. Pa. Jan. 28, 2020) (citing cases).

The DPPs contend that Defendant—originally named Reckitt Benckiser Pharmaceuticals, Inc.—was demerged from its prior parent, RBG, in December 2014. The DPPs assert that Defendant thereafter became Indivior, Inc., and its new parent entity became Indivior plc, which "was an attempt by RBG to simultaneously insulate itself from liability by distancing itself from [Defendant], while continuing to profit from the monopolistic scheme it had started." (DPPs' Mot. 4.) According to the DPPs, under the demerger agreemenent, the new Indivior plc parent entity—whose only real assets were Defendant's Suboxone revenues—agreed to pay RBG and its executives/directors over $592 million in "dividends" in the years after the demerger. (Id.) In addition, per the DPPs, the demerger agreement includes an indemnification clause wherein if RBG is ever forced to disgorge any of its ill-gotten Suboxone gains, it could look to Defendant to "re-engorge" itself, thus siphoning funds out Defendant and into RBG. (Id. at 5.)

As it relates to their request to amend their Complaint, the DPPs go on to assert that the ramifications of this agreement only came to light recently when, on April 9, 2019, Defendant and Indivior plc were indicted on multiple counts in the United States District Court for the Western District of Viginia, resulting from their marketing of Suboxone film and tablets. Defendant, Indivior plc, and an entity named Indivior Solutions all pled guilty to one count of felony healthcare fraud and agreed to pay $600 million to the Government. In addition, on July 11, 2019, RBG, who had not yet been indicted, agreed to pay $1.4 billion to the government to resolve its own potential criminal and civil liability. In November 2020, following these agreements, RBG sought indemnification, under

the demerger agreement, from Defendant and Indivior plc for the $1.4 billion it owes to the Government. Defendant ultimately agreed to pay RBG $50 million over the next five years.

The DPPs now stress that, until just months ago, there was no action by RBG seeking indemnity from Defendant, which would leave Defendant grossly undercapitalized. The DPPs argue that they did not know, and could not have reasonably known, until November 2020, at the earliest, that RBG and the other proposed new defendants were using the demerger agreements as an unlawful device to fraudulently convey monopoly profits from Defendant to RBG. The DPPs further press that neither Defendant nor any of the other proposed new defendants will be unduly prejudiced by the filing of the Third Consolidated Class Action Complaint.

The factual basis of the DPPs' new theories of liability is premised almost entirely on a provision in the demerger agreement. The demerger agreement—including its indemnification provisions—has been publicly available on Indivior and Reckitt websites since 2014. Indeed, in October 2017, the parties litigated a motion to dismiss, and I issued an extensive decision, discussing in great detail the indemnification provision in the demerger agreement. In re Suboxone Antitrust Litig., No. 13-md-2445, 2017 WL 4810801 (E.D. Pa. Oct. 25, 2017). Accordingly, the DPPs cannot suggest that they knew nothing of this agreement and its indemnification provision until recently.

This knowledge was all the DPPs needed to pursue their current theories. RBG, through the demerger agreement, had the ability to seek money from Defendant to recoup losses or liabilities relating to Suboxone. The mere fact that RBG has only recently invoked that indemnification provision does not justify the late amendment of the Complaint. Indeed, the DPPs, confident in their belief that Defendant and its affiliates committed some wrongdoing with respect to Suboxone, could have reasonably foreseen that at some point RBG would be held liable and would seek to use the indemnification provision to cover its liabilities and extract money from Defendant.

Moreover, the DPPs offer no justification for why they are only now seeking to add conspiracy to monopolize claims that were clearly known or knowable since day one of this matter.  Even had the DPPs not known the extent of any conspiracy at the outset, the parties have since engaged in years worth of fact discovery, which ended in July 2018.  Yet, the DPPs waited another two and a half years to seek to add conspiracy claims.  Accordingly, any effort to file a Third Consolidated Class Action Complaint at this late stage of the litigation constitutes undue delay.

Such delayed amendment would undoubtedly cause an unfair prejudice on Defendant and the proposed new defendants.  This case has been pending since 2013, with the last amendment of the Complaint occurring in 2015.  Fact and expert discovery have long been closed; class certification motions were briefed, argued, and decided;  the United States Court of Appeals has considered and affirmed the class certification ruling; and two phases of <u>Daubert</u> motions have been ruled upon. Opening briefs in support of multiple summary judgment motions—totalling hundreds of pages— have already been filed.   All involved have invested an untold number of hours bringing the case to this penultimate stage.

While the DPPs attempt to minimize the impact the proposed amendment would have on the progress of this case, they admit that fact discovery will need to be reopened.  This would also probably involve new expert discovery and further <u>Daubert</u> litigation, which in turn would halt the currently pending motions for summary judgment.  The addition of new defendants would also necessitate the entry of new counsel that would need to familiarize themselves with the extensive proceedings in this matter.  The new defendants, as separate entities, would then be entitled to file motions to dismiss, take new discovery directed towards the particular allegations against them, hire their own experts, and challenge the validity of the class proceedings.

Accordingly, I will deny leave to amend.  An appropriate Order follows.