**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION | : : : : | **MDL NO. 2445** **13-MD-2445** |
| THIS DOCUMENT RELATES TO:, | : : | |
| *Wisconsin, et al. v. Indivior Inc. et al.* Case No. 16-cv-5073 | : : : | |
| STATE OF WISCONSIN By Attorney General Brad D. Schimel, *et al.* | : : : | |
| Plaintiffs, | : : | **CIV. A. NO. 16-5073** |
| v. | : : | |
| INDIVIOR INC. f/k/a RECKITT BENCKISER PHARMACEUTICALS, INC., et al. | : : : | |
| Defendants. | : : | |

**MEMORANDUM**

Goldberg, J.                                                    February 2, 2022

Defendant Indivior, Inc. ("Defendant")[1] manufactures Suboxone, a drug commonly used to combat opioid addiction.  Suboxone previously came in tablet form, but in 2010, citing safety concerns, Defendant effectuated a change in the administration of this drug, switching from tablet to sublingual film.  Various purchasers/consumers of Suboxone claimed that this switch was anticompetitive and solely designed to maintain Defendant's market exclusivity—a scheme known as a "product hop." These claims have resulted in multi-district, antitrust litigation before this Court, as well as the certification of a class of direct purchaser Plaintiffs ("DPPs").

---

[1]      Indivior, Inc. was formerly known as Reckitt Benckiser, Inc.  In December 2014, Reckitt Benckiser Pharmaceuticals, Inc. was demerged from its prior parent, the Reckitt Benckiser Group PLC, into Indivior PLC.

In September of 2020, Defendant moved to disqualify named Direct Purchaser Plaintiff Rochester Drug Co-Operative, Inc. ("Rochester") in light of its ongoing bankruptcy proceedings and proposed plan to assign its antitrust claims against Defendant.  I denied that Motion, finding that "Rochester's established history of prosecuting antitrust class actions, its strong interest in pursuing the antitrust claims, the involvement of other class representatives, and the relatively minimal conflict resulting from Rochester's unsecured debt to Defendant weighed against disqualification of Rochester as a class representative."  In re Suboxone Antitrust Litig., No. 13-md-2445, 2021 WL 214302, at *2–6 (E.D. Pa. Jan. 21, 2021).

On April 16, 2021, Defendant filed a Renewed Motion to Disqualify Rochester, asserting that the bankruptcy court had confirmed Rochester's Second Amended Chapter 11 Plan of Liquidation, which resulted in Rochester liquidating its assets and assigning its antitrust claims to a Liquidating Trust. Claiming that Rochester no longer has standing and is no longer a real party in interest, Defendant renews its prior argument that Rochester cannot serve as an adequate class representative.

## I.    ROCHESTER'S BANKRUPTCY PLAN

On January 15, 2021, Rochester submitted its "Second Amended Chapter 11 Plan of Liquidation" (the "Plan") to the bankruptcy court.  (Def.'s Ex. 1.)  The Plan called for Rochester to transfer all of its assets to a new entity known as the Liquidating Trust and to cease operations as of the Effective Date. The plan was confirmed on February 26, 2021, (Def.'s Ex. 2) and Rochester subsequently filed a "Notice of Effective Date of Chapter 11 Plan," fixing the Effective Date as March 19, 2021.  (Def.'s Ex. 3.)  On the Effective Date, all of Rochester's assets, including its antitrust claims here, vested in a Liquidating Trust.  (Def.'s Ex. 1.)

The Plan contains the following relevant provisions:

- "As of the Effective Date, and except as otherwise provided in this Plan, all Assets, including, without limitation, the Avoidance Actions, Antitrust Actions, and Causes of Action, shall vest in the Liquidating Trust free and clear of all Claims, liens, encumbrances, charges, shareholder interests and other interests, including, for the avoidance of doubt, derivative Causes of Action that have been, or may be, brought on behalf of the Debtor, including any pending or future derivative Causes of Action, subject to the terms and conditions of this Plan and the Cofirmation Order."  (Id. § 5.4.)

2

- "From and after the Effective Date, the Debtor [Rochester] shall continue in existence for purposes of . . . enforcing and prosecuting claims, interests, rights and privileges of [Rochester], including, without limitation, the prosecution of the Avoidance Actions and the Causes of Action . . . All of the foregoing actions may be taken by the Liquidating Trustee on behalf of the debtor. . . . The provisions of this Section 5.5 shall in no way limit the right of the Liquidating Trustee to take any action or exercise any power in his or her own name, but shall provide the Liquidating Trustee with the right to take action in the name of the Debtor if the Liquidating Trustee deems it beneficial to the interests of the beneficiaries of the Liquidating Trust to do so." (Id. § 5.5.)

- "[A]ll Avoidance Actions, Antitrust Actions, and Causes of Action of the Debtor which have not otherwise been acquired by third parties or released pursuant to the Plan shall survive confirmation of this Plan and the commencement or prosecution of such Avoidance Actions, Antitrust Actions, and Causes of Action by the Liquidating Trustee or otherwise shall not be barred or limited by *res judicata* or any estoppel, whether judicial equitable or otherwise." (Id. ¶ 5.6.)

- "On the Effective Date, the Debtor's management shall be relieved of all further responsibilities, and the Debtor's directors and officers shall be deemed to have resigned therefrom, and the operation of the Debtor shall become the general responsibility of the Liquidating Trustee." (Id. ¶ 5.2.)

## II.    DISCUSSION

Defendant renews its request to disqualify Rochester as a class representative arguing that Rochester no longer has standing to prosecute its claims, is no longer the real party in interest, and is no longer an adequate representative.   Defendant contends that, under the confirmed bankruptcy Plan, Rochester has expressly assigned its claims to the Liquidating Trust.  It posits that a debtor whose claims vest to a bankruptcy trustee may not remain a named plaintiff because the debtor has no standing to prosecute the action.   Moreover, having given up its right to prosecute the antitrust claims, Defendant presses that Rochester has nothing to prosecute and is not the real party in interest.

Defendant's briefing on this issue conflates standing, real party in interest, and adequacy, using these words interchangeably without acknowledging the distinctions between these separate concepts or their impact on the matter before me.  I address each issue below.

### A.  <u>Standing</u>

Rochester's assignment of its antitrust claims to the Liquidating Trust does not implicate Article III standing concerns.  "Standing and the ability to serve as a class representative are different concepts and must be evaluated separately."  <u>In re Herley Indus. Inc. Secs. Litig.</u>, No. 06-2596, 2009 WL 3169888,

at *3 (E.D. Pa. Sept. 30, 2009) (citing <u>Hassine v. Jeffes</u>, 846 F.2d 169, 175 (3d Cir. 1988)).  "Standing involves 'both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise.'"  <u>Id.</u> (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)).

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents."  <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 216 (1974) (citation omitted).  Nonetheless, "[t]he rule that 'a class representative must be part of the class,' is one of prudential standing, related to the broader principle that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  <u>Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 100 (2d Cir. 2007) (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 156 (1982); <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975)).

For purposes of constitutional standing, "one who sells his interest in a cause of action is not deprived of Article III standing."  <u>Cranpark, Inc. v. Rogers Grp., Inc.</u>, 821 F.3d 723, 730 (6th Cir. 2016) (collecting similar cases).  By the same token, assignees of antitrust claims retain the same Article III standing as their assignors to pursue those claims:

> The assignment of a claim from a person who suffered an injury to someone who did not does not make the claim any less a "case or controversy" which the courts have the constitutional capacity to resolve.  It is indeed commonplace for an assignee to institute or continue an action of his or her assignor on an assigned claim even though he or she, apart from the assignment, is without standing, and the court, apart from the assignment, would be without power to decide the case.  <u>See, e.g.</u>, Fed.R.Civ.P. 25(c) (providing that in the case of "any transfer of interest, the action may be continued by or against the original party" or, upon motion, by or against the transferee) . . . Similarly, an assignment of a class claim by a person who purports to be a class representative does not render the class less amenable to resolution as a class action or class action treatment less beneficial to the litigants, after the transfer of the asserted cause or causes of action than before.

<u>Cordes</u>, 502 F.3d at 102.  As such, "a valid assignment gives a plaintiff standing to pursue an assignor's claims, even if the assignee will not receive any pecuniary gain from pursuing the action and

would otherwise not have standing." In re Herley Indus. Inc. Secs. Litig., 06-cv-2596, 2009 WL 3169888, at *6 (E.D. Pa. Sept. 30, 2009); see also Wallach v. Eaton Corp., 837 F.3d 356, 364–65 (3d Cir. 2016) (holding that an indirect purchaser's standing to serve as a named representative of a putative class of direct purchasers hinges on the validity of a party's assignment of such direct purchaser claims to the indirect purchaser).

Here, Defendant does not question that Rochester has standing by virtue of (a) being a direct purchaser of Suboxone during the relevant time period and (b) having allegedly suffered antitrust injury due to Defendant's actions.  Defendant also does not challenge the validity of the assignment of the antitrust claims from Rochester to the Liquidating Trust.  Finally, it is undisputed that, under the assignment, Rochester continues in existence for purposes of enforcing and prosecuting the antitrust claims, and that the Liquidating Trust can act in Rochester's name if it deems it beneficial.  Accordingly, the assignment does not vitiate Article III standing.

## B.  Real Party in Interest

Second, Defendant asserts that Rochester is not the real party in interest because it has assigned all of its assets, including "Antitrust Actions" to the Liquidating Trust.

Federal Rule of Civil Procedure 17—which is the Rule governing real parties in interest—provides, in part, that "[a]n action must be prosecuted in the name of the real party in interest.  Fed. R. Civ. P. 17(a).  The United States Court of Appeals for the Third Circuit has clarified that "Federal Rule of Civil Procedure 17 requires that an action involve only the real parties in interest, *as determined by transfers prior to the initiation of suit*." FDIC v. Deglau, 207 F.3d 153, 159 n.2 (3d Cir. 2000) (emphasis added).  Where a transfer of an interest takes place *after* the initiation of suit, "the proper vehicle for challenging [a party's] continuing involvement [is] a Rule 25 motion." Id.

Federal Rule of Civil Procedure 25(c) clearly states, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c).  "Th[is] rule expressly

5

permits parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action *itself* survives the transfer to the new party." ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186 (8th Cir. 1995) (emphasis in original). Notably, "Rule 25(c) 'does not require that anything be done after an interest has been transferred.'" Luxliner P.L. Export Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71 (3d Cir. 1993) ((quoting 7C Wright, Miller & Kane, Federal Civil Procedure § 1958 at 555 (2d ed. 1986)). Although substitution is usually effected during the course of litigation, substitution has been upheld even after litigation has ended as long as the transfer of interest occurred during the pendency of the case. Id.

Here, at the time litigation was commenced, Rochester was unequivocally a real party in interest, as it was a direct purchaser from Defendant during the relevant time period. Accordingly, Federal Rule of Civil Procedure 17 is not implicated. During the pendency of the litigation, Rochester has assigned its interest in the litigation to a Liquidation Trust, and the cause of action itself survived that transfer. Under Federal Rule of Civil Procedure 25(c), Rochester may therefore continue in the action, even if it is no longer the real party in interest.

**C. Adequacy**

Having resolved Defendant's invocation of standing and real party in interest issues, the question remains whether a party who has assigned away its claim can still serve as an adequate class representative. As I previously recognized, "[c]ourts have never held that bankruptcy filing automatically renders an otherwise appropriate class representative inadequate. Indeed, several courts have certified class actions prosecuted by named plaintiffs involved in bankruptcy." DeStefan v. Frito-Lay, Inc., No. 10-112, 2011 WL 13176229, at *5 (C.D. Cal. June 6, 2011) (citing Wanty v. Messerly & Kramer, P.A., No. 05-350, 2006 WL 2691076, at *1 (E.D. Wis. Sept. 19, 2006) ("The fact that the plaintiffs filed for bankruptcy, therefore, does not demonstrate that their interests are different from those of the class . . ."); Wilborn v. Dun& Bradstreet Corp., 180 F.R.D. 347, 355–57 (N.D. Ill. 1998) (finding a bankruptcy debtor to be an adequate representative)). As I observed in my prior Opinion on Defendant's original Motion to

Disqualify, there is no "flat rule that a trustee in bankruptcy (or, what is the equivalent, a debtor in possession) can never be a class representative." <u>Dechert v. Cadle Co.</u>, 333 F.3d 801, 803 (7th Cir. 2003). Rather, "[t]here may be cases in which the expected recovery of individual class members is substantial and only a fiduciary is available to be the class representative." <u>Id.</u>

In re <u>Zetia (Ezetimibe) Antitrust Litig.</u>, No. 18-md-2836, 2020 WL 3446895 (E.D. Va. June 18, 2020) <u>vacated and remanded on other grounds</u> 7 F. 4th 227 (4th Cir. 2021), the United States District Court for the Eastern District of Virginia considered Rochester's adequacy as a class representative and found that its "strong interest in vindicating its fairly substantial $40.5 million claim; Defendants' comparatively small value of unsecured claims against [Rochester]; and [Rochester's] proven history of serving as an adequate class representative in similar class actions" made it "an adequate class representative in this case despite its ongoing Chapter 11 bankruptcy proceeding." <u>Id.</u> at *27.  In a recent decision affirming that ruling, the Fourth Circuit found "no abuse of discretion in the decision that named plaintiff Rochester, despite its current Chapter 11 bankruptcy proceedings, still 'share[s] common objectives and the same factual and legal positions' as other class members. . . . Indeed, Rochester's bankruptcy status gives it a 'strong interest' in recovering its 'fairly substantial' $40.5 million in treble damages." <u>In re Zetia (Ezetimibe) Antitrust Litig.</u>, 7 F.4th 227, 236–37 (4th Cir. 2021).

Considering Defendant's prior Motion to Disqualify, I found that Rochester's duty as a debtor-in-possession aligned with its role as a class representative because Rochester's bankruptcy estate expressly includes Rochester's antitrust class action and, thus, Rochester must maximize the value of its claims, which necessarily include those of the class members.  Since that last ruling, however, Rochester's bankruptcy Plan has been confirmed by the Bankruptcy Court, and the Plan has gone into effect. Defendant urges that Rochester does not currently own the claims it has been prosecuting and is incapable of taking any action since acting as a class representative is not one of the limited winding-up activities Rochester is authorized to engage in.  (Def.'s Ex. 1, §§ 5.4, 5.5.) Defendant further presses that, because,

under the Plan, Rochester's management is "relieved of all further responsibilities," Rochester has no agent to act on its behalf.  (Id. ¶ 5.2.)

Defendant's argument disregards several crucial portions of the Plan which alleviate these concerns.  Primarily, as noted above, § 5.6 of the Plan provides that all actions, including "Antitrust Actions" survive the commencement of the Plan.  (Id. § 5.6.)  Moreover, under section 5.5, "[f]rom and after the Effective Date, the Debtor *shall continue in existence* for the purpose of . . . (iii) enforcing and prosecuting claims, interests, rights, and privileges of the Debtor, including, without limitation, the prosecution of the Avoidance Actions and the Causes of Action."  (Id. § 5.5 (emphasis added).)  Although Rochester exists without management, section 6.2(l) of the Plan provides that the Liquidating Trustee has the power "to act *on behalf of the Debtor and the Estate* in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions, *Antitrust Actions* and Causes of Action) . . . "  (Id. § 6.2(l) (emphasis added).; see also Id. § 5.5 ("The provisions of this Section 5.5 shall in no way limit the right of the Liquidating Trustee to take any action or exercise any power in his or her own name, but shall provide the Liquidating Trustee with the right to take action *in the name of the Debtor* if the Liquidating Trustee deems it beneficial to the interests of the beneficiaries of the Liquidating Trust to do so.") (emphasis added).)  In short, Rochester continues to exist as an entity for purposes of pursuing this litigation and can act through the Liquidating Trustee.  The Liquidating Trustee, in turn, stands in Rochester's shoes, has no greater rights than Rochester itself has, and possesses the same interests that rendered Rochester an adequate class representative.  See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 356 (3d Cir. 2001) (bankruptcy trustee stands in the shoes of a debtor for purposes of litigation).

Many of the same reasons for which I previously found Rochester to be an adequate representative continue to exist notwithstanding the confirmation of the Bankruptcy Plan.  Defendant identifies no apparent or imminent conflict caused by allowing the Liquidating Trustee to proceed in Rochester's name. See In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., 795 F.3d 380, 395 (3d Cir. 2015) (noting

that a conflict must be apparent, imminent, and at the heart of the suit to defeat class action).  Additionally, the continued prosecution of the antitrust class action here is not constrained by the Bankruptcy Code or Bankruptcy Rules.  (Def.'s Ex. 1, § 5.6.)  Moreover, Rochester, acting through the Liquidating Trustee, retains a fiduciary duty to maximize the value of the estate, which includes the class action against Defendant.   Indeed, via affidavit attached to Plaintiffs' Response Brief, the Liquidating Trustee has affirmed that it is aware of the action against Defendant, that it has conferred with co-lead counsel for the class, and that "[j]ust like its predecessor-in-interest [Rochester] the Liquidation Trust, by and through Advisory Trustee as Liquidating Trustee, will continue in [Rochester's] role of supervising co-lead counsel in this case.  The Liquidation Trust already has a duty to maximize recovery in this case, and will continue to do so on behalf of the certified class.  [Advisory Trust] will continue to monitor the status of this case through periodic reports from co-lead counsel."  (Pl.'s Ex. 1, Decl. of Robert N. Michaelson ¶ 5.)  Finally, Rochester is one of four separate class representatives for the Direct Purchaser Class, and

Rochester's lawyers are one of three law firms designated as class counsel,[2] meaning that Rochester, acting through the Liquidating Trustee, will not have full control over the class action.[3]

In short, I find no reason to disqualify Rochester as a class representative and will deny Defendant's Renewed Motion.  An appropriate Order follows.

---

[2]     In support of its argument that Rochester's status as a debtor whose claims have vested to a bankruptcy trustee renders it an inadequate representative, Defendant cites numerous cases.  All of these cases are distinguishable at least in part on the basis that the named plaintiffs in those matters were individuals or small entities acting as the sole class representatives.  In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436–37 (8th Cir. 1999) (where the named plaintiff, a small convenience store, had sold its business assets to unrelated purchasers, including the plaintiff's interest in the present lawsuit, thus causing it to no longer be a member of the class, and where *there was no other named plaintiff*, class certification was properly denied on adequacy grounds); Leff v. Olympic Fed. Sav. & Loan Ass'n, No. 86-cv-3026, 1987 WL 15985, at *1 (N.D. Ill. Aug. 19, 1987) (reversing class certification where plaintiff, *as the sole class representative*, had sold all of the mortgaged property underlying his action, thereby depriving him of a claim against the defendant); In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig., 375 B.R. 719, 724 (S.D.N.Y. 2007) ("[The named plaintiff] lacks standing to remain a plaintiff in this case, in joinder with the Trustee or any other party.  Although the Trustee [in a Chapter 7 bankruptcy] has indeed succeeded to [the named plaintiff's] interest in this lawsuit, the Trustee *cannot be substituted as the sole plaintiff* because he cannot serve as a fair and adequate representative of the class." (emphasis added)); Rader v. Teva Parenteral Medicines, Inc., 276 F.R.D. 524, 529 (D. Nev. 2011) (holding that because plaintiff filed for personal bankruptcy and his claims are the property of his bankruptcy estate, he lacks standing to sue and cannot serve as the *sole class representative*); Rosenberg v. Renal Advantage, Inc., No. 11-cv-2152, 2013 WL 3205426, at *10–11 (S.D. Cal. June 24, 2013) (finding that the *sole named plaintiff*'s pending Chapter 7 bankruptcy precluded her from being an adequate class representative).

[3]     Defendant engages in a lengthy argument premised on the notion that if Rochester is removed as a class representative, counsel for Rochester must likewise withdraw or be engaged to represent one of the other class representatives.  As I decline to remove Rochester as a class representative, I need not address this argument.